WILLARD E. STEWART ET AL., APPELLANTS, V. CITY OF LINCOLN, APPELLEE.

FILED FEBRUARY 18, 1926.   No. 23572.

1. Appeal: VERDICT. The verdict of a jury cannot be sustained merely because a similar verdict has been returned by a jury on a former trial of the same issues.

2. ———: ———. "Where the verdict of a jury is clearly against the weight and reasonableness of the evidence, it will be set aside and a new trial granted." *Bentley v. Hoagland*, 94 Neb. 442.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed.*

*Wilmer B. Comstock,* for appellants.

*C. Petrus Peterson, Charles R. Wilke* and *R. A. Boehmer,* contra.

HEARD before MORRISSEY, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

MORRISSEY, C. J.

The city of Lincoln, exercising the power of eminent domain, appropriated a tract of land, of approximately 159 acres, owned by plaintiff.

Appraisers were appointed under the statute, but plaintiff, being dissatisfied with their award, appealed from the award made by the board of appraisers to the district court, where the cause was tried to a jury, and from a judgment entered in that court plaintiff prosecuted an appeal to this court. The judgment of the district court was reversed and the cause remanded for further proceedings. *Stewart v. City of Lincoln*, 108 Neb. 825. On a retrial, plaintiff recovered a verdict and judgment, but, being dissatisfied with the amount awarded, has prosecuted this appeal. The sole question for determination in the trial court was the value of the land at the time of its appropriation by defendant, January 19, 1919.

Plaintiff makes seven assignments of error, but the one which seems entitled to first consideration is the assignment which alleges that the recovery is grossly inadequate compensation for the property taken.

The property is located less than a mile from two of the railway depots, the United States post office, the city hall, and the state university. The chief engineer of the Chicago, Burlington & Quincy Railroad Company, and the former superintendent of that railroad company at Lincoln, testified that, at the time the land was taken over by the city, it was so situated as to be available for railroad trackage, industrial plants, etc. The correctness of this testimony is not questioned.

The ground is low, unsightly, and, if used for industrial purposes, it would require considerable filling, but the engineer just mentioned testified that the value of property for the purposes heretofore mentioned is to be determined by its location rather than by the elevation of its surface.

For many years the valley of which this land forms a part was subject to overflows, and this condition seriously affected the market value of the land, but the testimony shows that, prior to the institution of these proceedings, drainage districts had been organized and drainage canals dug and the danger from overflow reduced to a minimum.

On the trial, there was some attempt to show that a part

of the land was suitable for residential purposes, and it was asserted by plaintiff that the land was of the same general character as a certain addition to the city of Lincoln to which this land lay adjacent. Apparently to controvert this assertion, defendant offered in evidence an ordinance of the city establishing the grade in the addition to which reference had been made, and by this evidence showed that the grade was there established at an elevation three feet, or more, above the surface of the ground in controversy. Evidence was then introduced by defendant to show the probable cost of filling plaintiff's land so as to bring it up to the grade in the platted addition. This was done over the objection of plaintiff. It requires no discussion to show that the value of plaintiff's land could not thus be established, and, in view of the verdict returned, we are constrained to believe that the true issue became obscured.

It would extend this opinion to an unnecessary length to take up separately the testimony of each witness as to value. Nine witnesses were called by plaintiff, each of whom qualified as an expert on values by showing his many years' experience in banking, real estate, etc., and his personal knowledge of the land, and their valuations varied from a minimum of $57,650 to a maximum of $78,600, with an average of over $68,000.

An average of the valuations fixed by a like number of witnesses testifying for defendant was slightly in excess of $18,000. The right of some of these witnesses to be regarded as experts on the value to be placed upon property of this character is open to question. The witness making the lowest valuation, on cross-examination, admitted that in making his estimate he did not take into account the sale of a tract of ground separated only by a street from plaintiff's ground, and stated that such sales did not influence his judgment. As we understand his testimony, he was inclined to measure the price of plaintiff's land according to its worth for agricultural purposes, when, by the testimony of men of sound judgment and unquestioned veracity, it is shown to be chiefly valuable for industrial purposes. An-

other witness explained the reason for his conclusion in the following language: "The city is the available buyer for this tract. To develop it for industrial purposes or residential purposes, or for any other purpose, the cost would be too great for a man to buy it, notwithstanding all the advantages of its proximity to the city and the trackage, and it was on this basis that the city was the only party that could buy it without hurting them." It will be seen from this excerpt from the testimony that the mere extent of the tract governed this witness in his judgment as to the value. When a close study is made of the testimony given by other witnesses, it is found, in some instances, that, although possessing knowledge as to the value of properties in other parts of the city, their knowledge of values as affecting plaintiff's land is of a loose and general character.

In behalf of defendant, it is argued that three tribunals, namely, the original board of appraisers, and two juries, have made findings as to the value of plaintiff's property, and, therefore, this court should not disturb the judgment appealed from.

The finding made by the original board was so low, it may be said to show on its face that it was grossly inadequate. The judgment entered by the first jury was set aside because it was found to be based upon evidence which ought not to have been admitted. Are we now bound by a verdict which has already been adjudged to be erroneous? No. Such a holding would ultimately lead to a rule which would sustain an erroneous verdict because there had formerly been, in the same case, an erroneous verdict.

This court may be reluctant to disturb the findings of a jury, nevertheless, it has never refused so to do, where to sustain the verdict palpable injustice would result. At an early period this court said:

"To justify an interference with the finding of a court or jury, the preponderance of evidence must be clear, obvious and decided; but when the preponderance is so great, it is

the duty of the reviewing court to correct the mistake."
*Fried v. Remington,* 5 Neb. 525.

And in a case, similar in its nature to the one before us,
it is said:

"On an appeal from an award of damages for the con-
struction of a viaduct it appears from the proof that the
damages were grossly inadequate. The verdict and judg-
ment, therefore, are set aside and the cause remanded for
further proceedings." *Stanwood v. City of Omaha,* 38
Neb. 552.

And in *Bentley v. Hoagland,* 94 Neb. 442, it is held:

"Where the verdict of a jury is clearly against the weight
and reasonableness of the evidence, it will be set aside and
a new trial granted."

See, also, *Spirk v. Chicago, B. & Q. R. Co.,* 57 Neb. 565.

It is not deemed necessary to discuss the other assign-
ments made. The rulings on the admission of evidence, and
the permission to the jury to view the land involved, not-
withstanding the changes that had been made after the
land had been taken over by the city, were, in part, invited
by plaintiff's counsel, and these errors, if such they be, are
not likely to occur upon a retrial.

The judgment is reversed and the cause remanded for
further proceedings.

REVERSED.