JOSEPH F. LEFFELMAN, APPELLEE, v. CITY OF HARTINGTON, CEDAR COUNTY, NEBRASKA, A MUNICIPAL CORPORATION, APPELLANT.

113 N. W. 2d 107

Filed February 2, 1962. No. 35091.

260

*Philip H. Robinson,* for appellant.

*E. J. McCarthy* and *Verzani & Verzani,* for appellee.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

The defendant, City of Hartington, located in Cedar County, instituted eminent domain proceedings in the county court of Cedar County wherein the city sought to acquire 2.195 acres of land owned by the plaintiff, for park purposes. The plaintiff appealed from the award made by the appraisers to the district court for Cedar County. The only question submitted to the jury was the amount of damage sustained by the plaintiff as a result of the taking of 2.195 acres of his land. The jury returned a verdict finding for the plaintiff and against the defendant in the amount of $2,664.50. The defendant filed a motion for new trial which was overruled. The defendant city perfected appeal to this court.

The defendant assigns as error that the verdict of the jury was excessive, and that the trial court erred in not sustaining defendant's motion for new trial on that ground.

The defendant city is a city of the second class.

The plaintiff's petition on appeal to the district court alleged in substance that he was the owner of a tract of land which is described in the petition, and in addition Lots 3, 4, 5, and 6, Block 21, Felber Place Addition to the city of Hartington; that the lots above mentioned

are within the city limits and are divided into lots and blocks; that the remainder of the plaintiff's land adjoins that part which is within the city limits and also adjoins the Felber Place Addition to the city, being located immediately on the west side; that said land is suitable and desirable for a subdivision addition to the city; that the total acreage owned by the plaintiff is approximately 17 acres; and that at the time of taking the plaintiff had valuable corn and alfalfa crops planted and growing thereon, and used his buildings and yards for raising livestock. It was further alleged that on or about July 8, 1960, the city appropriated, by condemnation proceedings filed in the county court, a portion of the plaintiff's land as heretofore mentioned; that the plaintiff intended to have the total acreage of land owned by him, and that portion thereof which is properly suited and adapted, platted and subdivided into blocks and building lots, and to dispose of the same to the public for the construction of dwellings thereon; that the taking of the 2.195 acres and such crops planted thereon, which the plaintiff alleged to be of the value of $1,000 an acre, will result in permanent damage to the remainder of his tract of land by reducing the acreage thereof and making the same uneconomical to operate by the plaintiff, and will materially affect the value of his remaining land contiguous thereto, for the reason that the land appropriated is the best agricultural portion of the plaintiff's land, and further for the reason that the plaintiff has a large silo, 32 feet in height and 12 feet in diameter, a large barn, 48 feet by 48 feet in size, a corncrib and granary 9 feet by 28 feet in size, and a 9-room dwelling house located thereon; that by the taking this property will be ineffective to the plaintiff for the use to which it is put; and that the taking of the plaintiff's land as heretofore stated will interfere with his ingress and egress to the remaining land and will destroy the value of the plaintiff's yards adjacent to his farm buildings by materially reducing the distance

between such buildings and his property line, which in itself will have a detrimental effect on the value of the remainder of the said tract. The plaintiff prayed judgment for $4,800.

The defendant's answer constituted a general denial of all the allegations of the plaintiff's petition not admitted.

There are certain established rules of law which are pertinent to this appeal.

"The measure of damages for land taken for public use is the fair and reasonable market value of the land actually appropriated and the difference in the fair and reasonable market value of the remainder of the land before and after the taking." Armbruster v. Stanton-Pilger Drainage Dist., 169 Neb. 594, 100 N. W. 2d 781. In this case the court also said, quoting with approval from Quest v. East Omaha Drainage Dist., 155 Neb. 538, 52 N. W. 2d 417: " 'The words, "or damaged," in Article I, section 21, of the Constitution of Nebraska, include all actual damages resulting from the exercise of the right of eminent domain which diminish the market value of private property.' "

In Twenty Club v. State, 167 Neb. 37, 91 N. W. 2d 64, the court said: "In condemnation proceedings, where persons are shown to be familiar with the particular land in question, they may be permitted as witnesses to testify as to the value of the tract immediately before and immediately after the appropriation."

In Platte Valley Public Power & Irr. Dist. v. Armstrong, 159 Neb. 609, 68 N. W. 2d 200, it was said: "Where a jury is permitted to view the premises involved in eminent domain litigation, the result of its observations is evidence which, in arriving at a verdict, it may consider only in connection with other competent evidence. * * * The general rule is that the burden of showing the damages which the landowner or lessee will suffer rests upon him while the burden is on con-

demner to show matters which tend to reduce or miti-
gate the damages."

In Sump v. Omaha Public Power Dist., 168 Neb. 120,
95 N. W. 2d 209, quoting from Langdon v. Loup River
Public Power Dist., 144 Neb. 325, 13 N. W. 2d 168, this
court said: " 'The market value of property includes
its value for any reasonable use to which it may be
put. If, by reason of its surroundings, or its natural
advantages, or its artificial improvements, or its intrinsic
character, it is peculiarly adapted to some particular
use, all the circumstances which made up this adapta-
bility may be shown, and the fact of such adaptation
may be taken into consideration in estimating compensa-
tion. The proper inquiry is, what is its fair market
value in view of any reasonable use to which it may
be applied and all the reasonable uses to which it is
adapted?' * * * The evidence, however, must be lim-
ited to the adaptabiliy of the land for uses that may be
reasonably expected in the immediate future. In 18
Am. Jur., Eminent Domain, § 244, p. 880, the rule is
stated as follows: 'In other words, the owner is to be
given, by way of compensation for his land, its fair
price for any use for which it has a commercial value
of its own in the immediate present or in reasonable
anticipation in the near future.' See, also, 29 C. J. S.,
Eminent Domain, § 160, p. 1024. The adaptability for
uses which may be considered must be so reasonably
probable and so reasonably expected in the immediate
future as to affect the market value of the land at the
time the land is taken or damaged. There is a clear
distinction between what land may be worth in the
future and what it is worth at the time it was taken or
damaged in view of the future. The fundamental issue
is the reasonable market value of the land immediately
before and immediately after it is taken or damaged."

In the instant case there is no evidence to show that
the land owned by the plaintiff outside of the city limits
would, in the near future, be adapted as an addition to

the city of Hartington and divided into lots and blocks for the construction of dwellings thereon to be sold to the public.

The plaintiff and his brother purchased 16 and a fraction acres of land adjacent to the city limits from John Walz, for which they paid $10,500. The plaintiff had lived on this land for 12 years.

An exhibit in evidence shows this land, including a road, consists of 17.045 acres. The land taken by the city for park purposes and part of its golf course consisted of 2.195 acres, leaving the acreage remaining 14.85 acres.

The plaintiff also purchased four lots from James A. Walz for which he paid $2,500. These lots adjoin his premises on the east and are used in conjunction with his other property. All of his land is in one tract. His property adjoins a city street on the north, and there is a street on the south side of his property which is the main traveled street. The evidence shows there would be little interference, if any, with the right of ingress or egress to and from the plaintiff's property.

The plaintiff testified that in his opinion the land would be worth $2,500; and that by the taking, the rest of the land would be restricted and would be harder to sell.

The plaintiff and his brother improved the buildings on the premises in the amount of nearly $3,000. These buildings are apparently in the southeast part of the plaintiff's premises.

Lots 3, 4, 5, and 6, in Block 21, Felber Place Addition to the city, were acquired by the plaintiff in 1959, and are within the city limits. The plaintiff keeps some chickens, 5 sows, and a male hog on the acreage outside of the city limits, and the lots inside the city limits are used for pasture purposes.

The plaintiff made no attempt to justify his valuation of $2,500 on the land taken, nor did he testify as to any damage which would result to the rest of the tract of

land by reason of the taking of the 2.195 acres by the city.

A tenant farms the plaintiff's land on a two-fifths share of the crops basis. This tenant testified that the plaintiff's land was worth $1,000 an acre; and that the remainder of the plaintiff's land would be affected by the taking, to the extent of $700 an acre. He made some measurements which show that the silo on the plaintiff's land is 77 feet from the west side of Center Street, and the barn is 16 feet farther. The silo is the nearest building to the plaintiff's east line, and the plaintiff would have the distance of 52 feet, after the taking, from the east line to his silo.

Ivo Strattman testified that he had been engaged in the real estate business since 1918; that he lived at Wynot, Nebraska, but most of his business was done in Cedar County; that he was familiar with the values of real estate in said county; and that he had looked over and examined the plaintiff's property and was familiar with the part of the plaintiff's land that was being taken by the city. His opinion was that the plaintiff's land was worth $1,000 an acre, $16,000 for 16 acres which included the buildings; that after the taking there would be a smaller tract and the value would not be there; and that there would be a difference of at least $3,000, and maybe more. On cross-examination this witness testified that by the taking of the plaintiff's land for park or golf course purposes, the park would then come right up against the plaintiff's buildings. He further testified that if a man wanted to keep his land, he should set his own price. On redirect examination this witness testified that the fact that the plaintiff's land adjoined the city limits, and the fact that the land was in one tract, were factors that would make a difference in figuring the value of land near a city the size of Hartington as distinguished from that of a small town.

A real estate broker who resided in Coleridge, Nebraska, testified that she had been in the real estate

business since 1920, and had engaged in real estate transactions in Cedar County, however the evidence shows that this witness helped in only one such transaction in 1958. She testified that she examined the plaintiff's premises in June 1960. (It might be added that that is the date from which the fair market value of the plaintiff's land was to be considered in these condemnation proceedings.) This witness' opinion was that the premises would be worth $1,000 an acre; that the depreciation to the remainder of the land not taken by the city would amount to $200 an acre; and that the fair market value of the property to be taken would be $3,000.

David Ewing testified in behalf of the defendant city that he was born and raised in Hartington and conducted a business known as the Midwest Land Company whose business consisted of selling farm real estate and the appraisal of farm real estate; that he had done considerable appraisal work of farm real estate in the past 3 or 4 years by appraising land for individuals, governmental bodies, bank service and estates, and attorneys; that he had handled real estate transactions in Cedar County within the past year or two, and had an office in Hartington; that 80 to 90 percent of his time was spent in appraisal work and 10 to 20 percent on sales on his own time; that he was familiar with the plaintiff's property and was so on June 23, 1960; and that there was no change in the market value of the plaintiff's land up to the time of the hearing. He viewed the plaintiff's premises either on Friday or Saturday of the week preceding the hearing. He gave as his opinion that the plaintiff's land was worth $9,800 on the market; that the land to be taken by condemnation proceedings would be of the fair market value of $250 an acre; and that the severance damage to the remaining land of the plaintiff would be $50 to the entire tract. He based his opinion on his knowledge of the community and sales of comparable kind that he could find in

the area. This witness also testified that according to the Census Bureau statistics there was a decline in population in all towns in northeastern Nebraska.

Vernon Nelson, a resident of Hartington since 1948, testified that he was the manager of the Federal Land Bank Association, and in that capacity he had occasion to appraise real estate in Cedar County and was familiar with the general land values in said county. He further testified that he had viewed the plaintiff's premises and was familiar with the same on June 22, 1960; and that he viewed the premises in the fall of 1960. He gave as his opinion that the market value of the plaintiff's entire tract of land would be $250 an acre. He based his opinion on the basis of comparisons in sale price of comparable tracts in Cedar County which he had appraised. He testified that the entire tract of the plaintiff's land was used for agricultural purposes. On cross-examination he testified that he made appraisals of land in Cedar County as to agricultural value, and for that purpose only; and that the property sought to be taken from the plaintiff in the condemnation proceedings would be very limited for agricultural purposes.

The jury was permitted to view the premises.

It is apparent from the record that the qualifications of the expert witnesses and the testimony adduced in behalf of the plaintiff as to the fair and reasonable market value of the plaintiff's land and that part of which is taken by the condemnation proceedings was wholly lacking in placing values relating to the fair market value of the plaintiff's land for the purpose for which it is used.

As stated in Twenty Club v. State, *supra:* "Where a verdict of a jury is clearly against the weight and reasonableness of the evidence it will be set aside and a new trial granted." See, also, Bentley v. Hoagland, 94 Neb. 442, 143 N. W. 465; Stewart v. City of Lincoln, 114 Neb. 362, 207 N. W. 511; Heiden v. Loup River Public Power Dist., 139 Neb. 754, 298 N. W. 736; Moyer v.

Nebraska E. G. & T. Coop., 171 Neb. 879, 108 N. W. 2d 89.

From an examination of the testimony of the witnesses and an examination as to their qualifications to give testimony, the evidence adduced by the plaintiff discloses that the verdict of the jury is clearly against the weight and reasonableness of the evidence. The judgment rendered by the trial court on the verdict of the jury awarded the plaintiff an excessive amount as to damages for the land taken. The judgment of the trial court is reversed and the cause remanded for a new trial.

REVERSED AND REMANDED FOR NEW TRIAL.

SIMMONS, C. J., participating on briefs.