STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE, V.
FLOYD A. WIXSON ET AL., APPELLANTS.
122 N. W. 2d 72

Filed June 14, 1963. No. 35463.

Luebs, Elson, Tracy & Huebner, for appellants.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., and James M. Winter, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

MESSMORE, J.

This is a condemnation action instituted by the State of Nebraska, Department of Roads, against Floyd A. Wixson and Evelyn Wixson, husband and wife, joint owners of certain land taken by condemnation proceedings by the State of Nebraska, Department of Roads, plaintiff.

Floyd A. Wixson and Evelyn Wixson will hereinafter be referred to as defendants, or Floyd A. Wixson as Floyd Wixson.

Appraisers were appointed by the county court of Hall County and qualified as provided for by statute. The appraisers fixed the amount of damages due the defendants at $1,000. The plaintiff perfected appeal to the district court for Hall County. The case was tried to a jury. A verdict was rendered by the jury in favor of the defendants in the amount of $10,000. Judgment was entered on the verdict. The plaintiff filed a motion for new trial. The trial court sustained the plaintiff's motion for new trial and set aside the verdict of the jury. The defendants appealed to this court.

The question to be determined in this appeal is whether or not the verdict is excessive under the evidence adduced at the trial.

The plaintiff alleged in its petition that it was reconstructing State Highway No. 281 which is a part of the state highway system of the State of Nebraska; that in

the interest of public safety and for the benefit of public welfare this highway has been designated as a "controlled access facility" to which no access will be allowed from the remainder, except at designated points where access existed to the remainder prior to the highway reconstruction; that the sum assessed by the appraisers greatly exceeded the market value of the land taken, plus damages, if any, to the remainder; and that special benefits will accrue to the remainder which will offset damages, if any, due to the defendants.

The defendants by answer alleged that for many years prior to the commencement of the condemnation procedings, public highways were established and maintained along the westerly and southerly sides of premises owned by the defendants, including the tract of land taken by the plaintiff; that said highways created an intersection at the southwest corner of the defendants' premises; that for many years defendants have operated a cafe and tavern business on their premises in close proximity to the intersecting public roads and to the northeast of the intersection; that the two public roads were of approximately the same elevation as the premises surrounding the defendants' place of business, with free access thereto directly to the public road to the south and off the public road from the west for a distance of more than 100 feet from the southwest corner of their premises and along the westerly edge thereof; that at all times defendants maintained parking facilities for vehicles of all types, including large over-the-road trucks, around their place of business, and prior to the taking of the land here involved many operators of trucks and large vehicles using these roads drove into the place of business operated by the defendants, as customers; that defendants had ample facilities for such vehicles to drive into and out of their parking areas; that by reason of the reconstruction of State Highway No. 281 from its former location to its present location along the westerly side of the defendants' premises, the

highway has been elevated above the former elevation, all access along the westerly side of the premises of the defendants has been closed to traffic, and vehicles leaving said highway to enter the premises of the defendants are now required to make a sharp turn at the intersection of State Highway No. 281 and the public road along the south portion of the defendants' premises and use a grade which interferes with free access to the place of business operated by the defendants; and that it is difficult for large vehicles, including trucks, to turn into the parking area maintained by the defendants, resulting in a loss of business to the defendants. The defendants further alleged that the plaintiff has acquired additional right-of-way to the east of the present paved area for future development and construction of a 4-lane highway; and that when such future construction is completed the easterly edge thereof will be almost adjacent to the premises of the defendants, and the grade from the highway to the east will require traffic to proceed for a considerable distance past the place of business of the defendants before such traffic can turn into their premises. The defendants further alleged that a considerable portion of the parking area for customers heretofore maintained around their place of business is no longer available by reason of the taking by the plaintiff; that the premises are particularly adapted for the operation of a cafe and tavern, being a continuation of a similar business which has been operated at this intersection for more than 50 years, the location and existence of which are common knowledge in the area surrounding Grand Island; and that the construction of the highway has and will permanently damage the premises of the defendants. The answer then sets forth certain expenses which defendants would incur to put their business in condition to properly run and maintain same. The defendants prayed for judgment in the amount of $10,030.

The value of the one-tenth acre of defendants' prop-

erty taken in the condemnation proceedings was $30. This amount is not in dispute.

. The factual dispute in this case turns on the issue of damage to the remainder of the defendants' property after the taking away by the plaintiff of the one-tenth acre along the west side of the defendants' premises.

An assistant division engineer employed by the plaintiff testified that he was familiar with the situation regarding the defendants' property that existed prior to the time the construction started; that the road running north and south on the west side of the defendants' property was a graveled county road approximately 24 feet wide, reasonably level, with a standard 66-foot right-of-way; that just north of the defendants' property there was a bridge which was raised a little above the level of the road and was across Wood River; that the road running east and west intersecting with the north-south road was a 24-foot highway similar to the north-south graveled county road; that the elevation of the road compared with the elevation of the parking area drive-in in front of the defendants' building was about the same level as the defendants' property; that the access from the road to the defendants' property was uncontrolled; and that it was possible to drive onto the defendants' property at any location adjacent thereto. The width of the right-of-way on the east side of the new north-south road is 135 feet from the center of the paving, and on the west side about 80 feet. This witness further testified that standing in the center of the present paved portion, it would be 135 feet to the east edge of the present right-of-way, which includes 15 feet along the west edge of the defendants' property. In other words, the west line of the defendants' property was moved to the east approximately 15 feet. This witness further testified that he would estimate that the present road elevation above the ground of the defendants' property would be 5 or 6 feet, and directly opposite the building it is about 6.3 feet higher than the original ground

in that location. The bridge is higher than the normal roadway. The elevation was put at 6.3 feet at this place in constructing the road mainly for a matter of ample freeboard above a possible flood area. There is a new bridge across Wood River where the old bridge was located which has at least doubled the capacity of the old bridge. After the strip of ground, the one-tenth acre, was taken along the west side of the defendants' land, defendants lost their access from the west side and also a part of their parking area. There is a ramp connecting the east-west road with the paved portion of the north-south road. This ramp was approximately a 5 percent gradient leading from the shoulder of the road. The width on top of the ramp is approximately 22 to 24 feet. The shoulder on the east side of the paved strip is 10 feet wide. The slope of the shoulder is considerably more than the slope of the paving, and the grading of the approach road should "hit the normal shoulder elevation at 10 feet." There are no wings constructed for vehicles to pull off of the new road if they want to make a turn. Vehicles pulling off of the paved portion are required to remain on the paved portion until such vehicles make the turn. The approximate length of the ramp from the east edge of the pavement is 100 to 125 feet. The ramp extends down the south side of the defendants' property. The access to defendants' property does not commence until almost when the end of the ramp is reached, that is, coming from the west. The future plans of the plaintiff include a second road, making a 4-lane divided highway. The usual practice is to construct the new road at the same elevation as the existing road. Southbound traffic, getting from the west road onto the east-west road that goes past the defendants' property, will require a left-turn connection constructed between the two paved lanes. It is not the practice of the Department of Roads to eliminate those connections. Southbound traffic would have to turn to the left and cross the traffic in the northbound lane

when the other road is connected. That will call for a ramp from the east edge of the new road similar to that which exists at this time. The strip of land taken by condemnation is about 300 feet long and 15 feet wide.

Floyd Wixson, one of the owners of the land in question, testified that the land is east of the north-south road which is now the highway. With relation to the county road running east and west, his property is located on the northeast corner of the intersection and comprises 11⅓ acres. The land in question was purchased by the defendants in 1958, and they have operated a cafe and tavern on the land for at least 11 years. The road that went along the west side of the property before the construction was a level, graveled road and was a little lower than the defendants' property. To the north this road proceeds up to Webb's livestock sales yard and connects with U. S. Highway No. 30. The new bridge is 3 or 4 feet higher than the old bridge. There is an east-west road running south of this propery which is a graveled, county road of the same width as the north-south road before the construction, and is lower than the ground owned by the defendants. The building is 80 feet long and 24 feet wide, not including the porch. The defendants had parking facilities all around the building, that is, in front of the building, to the east side of it, and to the rear or north. This witness further testified that trucks operating on the north-south highway have not stopped in at his place of business since the reconstruction of that road; that the old road along the west side of the defendants' property was scenic, and on Sundays there was much traffic from Hastings, Prosser, and Doniphan; that it was easy to get off of the old north-south road and stop in at the defendants' place of business for refreshments; that during the week traffic would proceed along the north-south road to Webb's livestock sales yard; that some of the persons patronizing the stock sales stopped at defendants' place of business; that

directly east of the building there is no area available for use at the present time; and that about 2 acres are necessary for the operation of the business. This witness further testified that the business consists of selling beer, steaks, sandwiches, pop, candy, and chewing gum, has been operated in the same area for 75 years, and is well known throughout the community; that during business hours in the daytime farmers would stop enroute to the Webb livestock sales yard to sell cattle, sheep, and hogs; that in the evenings there would be a different type of customers, people who were getting off of work in Grand Island; that on Sundays the business consisted of families; that these customers would drive into the parking area and stop for refreshments; that the road which passes the place of business is higher than it was before the construction, and this construction makes it difficult for customers on either the north-south road or the east-west road to enter defendants' place of business; that in order to have customers enter the area east of the place of business, the ground will have to be sloped and leveled off; that due to the cramped condition of the parking area the building will have to be moved back and it will require an additional 4 acres to properly operate the business, including what is now used for such purposes; that after the second road is constructed and the building moved back, the road ditch will have to be culverted to enable customers to enter defendants' place of business; that by moving the building back, it will be necessary to have big electric signs in order to draw customers into the place of business; that the present road is a state highway with heavy traffic and the speed of the vehicles is rather fast; and that to get on and off of this road it would be necessary for the drivers of vehicles to wait and ascertain the movement of cars going in both directions. This witness testified that the value of the property immediately before the construction and condemnation proceedings were instituted by the plaintiff was about

$30,000, and after the taking the value was $20,000, leaving a difference of $10,000, plus $30 for the strip of land taken.

A real estate broker engaged in the real estate business in Grand Island with extensive experience in the sale and appraisal of all types of real estate testified that he had been acquainted with the defendants' property for many years, had on occasions been a customer, and was familiar with the defendants' property prior to the time of the condemnation proceedings, the general access thereto and the parking facilities in connection therewith, and had been there since the new road was completed; and that he had observed the changes in the access to the defendants' property and the parking facilities. He then described what he considered in appraising the value of the property, with particular attention to the present condition, the elevation of the present road, the ramp, the accessibility to the defendants' property, and the width of the road. He testified that the exit from the highway leading east to the front of the defendants' tavern is approximately 18 feet wide and is supposed to be 20 feet wide, and the grade is, in his judgment, 8 to 10 feet high; that the defendants are utilizing about 2 acres of ground in connection with their business; that prior to the taking by condemnation by the plaintiff, the 2 acres plus the improvements thereon had a value of $15,900; that after the taking by the plaintiff the value was $9,400, and the difference was $6,500; and that prior to the taking the defendants' property was adapted for the use of a cafe and tavern.

On cross-examination this witness testified that more traffic was going by the defendants' property now than there had been before. On redirect examination he testified that access to premises is important; that prior to the taking, the level of the defendants' property was almost the exact level of the road; and that the difference that exists at this time is that the new road creates a condition of lack of access which is a big detriment to

the defendants' business and very definitely affected the value of the property. On recross-examination he testified that when businessmen go into business which is dependent upon traffic, they want on a main-traveled highway with plenty of access to their place of business.

An experienced real estate appraiser employed by the plaintiff testified that when he first saw the property it consisted of about 11 acres lying east and west on the south side of Wood River, bound on the south by a graveled county road and on the west by a graveled county road. The road at that time had not been graded up very high and essentially the road and the defendants' property were about the same elevation. At the west end of the property the defendants had a cafe, and there were some scattered trees over a major portion of the property. The factors he considered in making his appraisal were the market for real estate in the area, its nearness to Grand Island, its location with respect to the road it was on, and the income of the business, which he considered very important. He received information from the defendants as to the income derived from their business which disclosed defendants' income for 1957, 1958, and 1959, but not for 1960. In 1957 the defendants' net income was $3,537.20; in 1958 it was $3,112.35; and in 1959 it was $4,002.37. The average for the 3 years was $3,550.65. This witness further testified that on the day of the taking, February 27, 1961, the reasonable market value of the defendants' property, valuing 11.36 acres, was $17,130; that the value of the remainder of the property not including the one-tenth of the acre taken was $17,100; that the reasonable market value of the defendants' property after the taking or the acquisition on February 27, 1961, was $18,550; that after a study of the market it was his opinion that the defendants' property will be benefited by the additional traffic which would attract business; and that some improvement would need to be made on the property to make it useable, but such damages would be

offset by the benefits. On cross-examination this witness testified that the land other than that used for the cafe or tavern could be used for various projects, but there would be many clearing and leveling costs and hauling from the highway that he did not consider in arriving at his figure of the benefits. He further testified that although trucks may experience a little more trouble getting into the defendants' place of business, they would have a much better road to get into the defendants' premises. He did not know what it would cost the defendants to rearrange the parking facilities.

The plaintiff argues that an average net income of $3,550, over a period of 3 years, based upon a valuation of $30,000 and with no amount charged by defendants for wages, is indicative of the fact that the verdict was excessive. The net income of the defendants was slightly in excess of 10 percent, considered upon a $30,000 valuation. While there is no evidence that defendants took wages out of the business and considered profits over and above the wages, certainly the defendants could run their business as they chose. In any event, the above matters appear in the record and might have been argued to the jury and considered by the jury.

The plaintiff also makes some contention with reference to the trial court being concerned about the foreman of the jury being a son-in-law and employee of a man who had had considerable litigation with the Department of Roads. This concern of the trial court was definitely refuted by an affidavit of the juror. The trial court had no right to consider the personal relationship or standing of the foreman of the jury for the reason that there was no evidence introduced concerning such matter. The information considered by the trial court is not supported by the evidence and is contrary to the true facts. We see no merit to the plaintiff's argument in this respect in considering this appeal. See 20 Am. Jur., Evidence, § 16, p. 46.

We deem the following authorities to be applicable to the instant case.

In Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, this court said: "A new trial is to be granted for a legal cause and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons." See, also, Tingley v. Dolby, 13 Neb. 371, 14 N. W. 146; Missouri Pacific Ry. Co. v. Hays, 15 Neb. 224, 18 N. W. 51. This court further said: "The district court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion. The word 'discretion' is one of variable meanings depending on its use. In Tingley v. Dolby, supra, we quoted with approval this definition by Lord Mansfield: 'Discretion when applied to a court of justice means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful, but legal and regular.' As used in the connection here presented it means that the court in its ruling must be guided and governed by applicable law. It means the application of statutes and legal principles to all of the facts of a case. Shopiro v. Shopiro (Cal. App.), 153 P. 2d 62." See, also, Myers v. Platte Valley Public Power & Irr. Dist., 159 Neb. 493, 67 N. W. 2d 739.

In Connor v. State, *ante* p. 140, 120 N. W. 2d 916, this court said: "In a condemnation action the weight and credibility of testimony of either lay or expert witnesses regarding value of land taken or value of remainder immediately before and immediately after taking is for the jury. * * * Under ordinary circumstances expert opinion evidence is to be considered and weighed by the triers of fact like any other testimony. * * * The amount of the damages sustained by a landowner for a right-of-way condemned across his land is peculiarly of a local nature to be determined by a jury, and its verdict will not ordinarily be interfered with if it is based on

the testimony. * * * In a condemnation action, when the evidence is conflicting, the verdict of a jury will not be set aside unless it is clearly wrong."

The owner of real estate which is taken in condemnation proceedings who is familiar with its value can testify as to its value. Johnson v. City of Lincoln, 174 Neb. 837, 120 N. W. 2d 297.

The amount of damages sustained by a landowner for a right-of-way condemned across his land is peculiarly of a local nature to be determined by a jury and this court will not ordinarily interfere with the verdict if it is based upon the testimony. See, Myers v. Platte Valley Public Power & Irr. Dist., *supra;* Kennedy v. Department of Roads & Irrigation, 150 Neb. 727, 35 N. W. 2d 781.

The plaintiff offered no evidence to controvert Floyd Wixson's claim of loss of business, damages allegedly caused by the reduction of the parking space, his claim that the building would have to be moved, or any other claims of loss as shown by his testimony. The jury's belief of Floyd Wixson's testimony inheres in the jury's verdict.

The objections made to Floyd Wixson's testimony by the plaintiff relating to value was that no proper foundation was laid to permit this witness to testify as to its value. There was no objection as to his competency to testify. He was a joint-owner of the property, lived on it, was acquainted with it, transacted business on it for 11 years, and had known the property for many years previously. Without question, a joint-owner of property such as Floyd Wixson, under the law of this jurisdiction, is competent to testify as to its value. There is no merit to the plaintiff's contention in this respect.

In the light of the record which is before this court the conclusion reached is that the judgment of the district court setting aside the verdict of the jury and the judgment rendered thereon, and the order granting a new trial, were erroneous.

Accordingly the judgment of the district court is reversed and the cause remanded with directions to reinstate the verdict of the jury and the judgment thereon.

REVERSED AND REMANDED WITH DIRECTIONS.