J. W. WAGNER, FIRST AND REAL NAME UNKNOWN, ET AL., APPELLANTS, V. STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLEE.

126 N. W. 2d 853

Filed March 13, 1964.    No. 35529.

Bosley & Bosley, for appellant.

Clarence A. H. Meyer, Attorney General, Harold S. Salter, Warren D. Lichty, Jr., and Willis L. Strong, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, SPENCER, BOSLAUGH, and BROWER, JJ., and LYNCH, District Judge.

LYNCH, District Judge.

This is a condemnation action. The condemnees, J. W. Wagner and Elizabeth Wagner, shall herein be referred to as the plaintiffs, and the condemner, State of Nebraska, Department of Roads, as the defendant.

The action was brought on June 7, 1962, in the county court of Hitchcock County, Nebraska. On February 5, 1963, the case was tried on appeal in the district court, during which trial the jury was permitted to view the premises. The jury returned a general verdict for the plaintiffs in the sum of $3,200; and, pursuant to the court's instructions, the jury also made a special finding fixing the value of the property taken at $1,700, and a second special finding setting the difference in the value of the remainder of plaintiff's property before and after the taking at $1,500.

On March 29, 1963, the defendant's motion for a new

trial was sustained. The trial court gave no reason for this decision.

The plaintiffs are the owners of the southwest quarter of Section 8, Township 3 North, Range 31 West of the 6th P.M., in Hitchcock County, Nebraska, which is about one-half mile west of Culbertson, Nebraska. Before the taking the plaintiff's farm included 101 acres of irrigated land and 52.57 acres of grassland or pasture. Improvements consisted of a 6-year-old, modern, ranch-type home with attached double garage, hog shed, cattle feed rack with concrete feeding floor, windmill, concrete tank, irrigation well, fencing, windbreak, landscaping, and a suitable driveway. The State took 3.88 acres along the south side of the land for highway purposes. Of the area taken there were about 3.44 acres of irrigated land and .44 acres of pasture. The plaintiffs' driveway and means of access to their property was the same after the condemnation as before and no improvements were included in the property taken.

The plaintiffs bring the matter to this court contending there was no prejudicial error in the district court proceedings and that the trial court erred in sustaining the defendant's motion for a new trial.

A review of the record reveals that the plaintiff, J. W. Wagner, and two of the plaintiff's witnesses set the value of the 3.88 acres of land acquired at $1,411, and the plaintiffs' other witness appraised this area at $1,415.60. The two witnesses who testified for the defendant gave estimates of $1,071.75 and $1,150 as the value of the land taken. The jury found specially that the 3.88 acres of plaintiffs' land actually taken for road purposes was worth $1,700.

Concerning the difference between the value of the remainder of plaintiffs' property before and after the taking, the plaintiff's witnesses gave figures ranging from $2,691.60 to $3,138.03, and the defendant's two witnesses set their estimates at $320 and $347.50. The special

finding of the jury allowed $1,500 as damage to the remainder.

The record in this case also reveals that the plaintiff, J. W. Wagner, testified that in his opinion the taking damaged the remainder of his irrigated land $15 per acre and the land south of the house about $1,000. He gave no basis or reasons for his calculations or estimates. On cross-examination Mr. Wagner testified that the condemnation did not disturb the irrigation well; that there were no buildings or other improvements on the 3.88 acres acquired by the State; that a fence was removed but not taken; that some alfalfa and brome were taken but no trees or shrubbery; that the windbreak was not altered; that the driveway is in the same place as before; that public traffic goes along the same line, the same distance from the house; that he runs the same number of cattle; that the farm yields just as much; and that there has been no change in the operation of the farm since the land was acquired for road purposes.

The plaintiffs' other witnesses gave no specific grounds for their appraisals of the damage to the remainder of the property, and they agreed generally that the farm operation and production were the same after the 3.88 acres were taken by the State as they had been before.

One of the defendant's witnesses based his $347.50 estimate of the damage to the remainder on the cost of moving 143 rods of woven wire fence and about 21 rods of barbed wire, plus the cost of rebuilding an irrigation box and earthen ditch. The defendant's other witness stated that in arriving at his opinion of the difference in the value of the remainder before and after the taking, he considered the fence which had to be moved and the fact that this alteration would put the property in about its previous condition so that it would command the same price on the open market.

The defendant contends that the special finding relative to the value of the land taken is not based on the testimony; that the special finding as to consequential

damages is clearly against the weight and reasonableness of the evidence; that the special findings are erroneous, therefore the general verdict cannot stand; that even though the jury viewed the premises the verdict is not supported by the evidence; and that clearly tenable grounds exist for the trial court's order granting a new trial, hence that order should not be disturbed.

The plaintiffs maintain that the amount of damages in a condemnation action is to be determined by the jury, and its verdict will not ordinarily be interfered with if it is based on the testimony; and that when the evidence is conflicting the verdict of the jury should not be set aside unless it is clearly wrong. State v. Dillon, 175 Neb. 444, 122 N. W. 2d 223. We have no quarrel with those statements of the law; however, we believe that the principal question here is whether or not under the law and the circumstances of this case there was an abuse of judicial discretion when the trial court sustained the defendant's motion for a new trial.

This court has held as follows: "The district court has the power and is required to consider and determine motions for a new trial by the exercise of its judicial discretion." State v. Wixson, 175 Neb. 431, 122 N. W. 2d 72. "In the exercise of judicial discretion, there is an abuse of that power where the reasons and rulings of the court are clearly untenable and deprive a party of a substantial right clearly and fairly established and amount to a denial of justice." Pettegrew v. Pettegrew, 128 Neb. 783, 260 N. W. 287. "An order of the trial court granting a new trial will not ordinarily be disturbed by this court, and not at all unless it clearly appears that no tenable ground existed therefor." Nesmith v. Clarke, 135 Neb. 117, 280 N. W. 429.

In ruling upon the motion for new trial the court had for its consideration a verdict based on: (1) A special finding allowing $1,700 for 3.88 acres of land acquired, whereas the highest estimate given by any witness for this element of damage was $1,415.60; and (2) a special

finding allowing $1,500 as the difference between the value of the remainder before and after the taking, whereas for this element of damage the plaintiffs' witnesses gave figures ranging from $2,691.60 to $3,138.03 and the defendant's witnesses stated estimates of $320 and $347.50. The trial judge also had for his thought and attention the circumstance that all of the witnesses agreed that the remainder of the plaintiffs' farm is the same after the taking as before; and that it is operated the same, irrigated the same, and produces the same. None of the plaintiffs' witnesses explained how or why the severance detracted from the market value of the remaining property. Only the cost of moving the fence supported the opinions relative to damage to the remainder.

Taking into account the foregoing, we believe it is clear from the record that tenable grounds exist to support the trial court's order and that there was not an abuse of judicial discretion in granting a new trial.

The plaintiffs also assert that when the jury is permitted by the court to view the premises, the verdict will not be set aside unless it is clear that the jury erred, citing Omaha & R. V. R.R. Co. v. Walker, 17 Neb. 432, 23 N. W. 348. This too is an accurate statement of the law; however, a view does not have the status of an evidential cure-all. In Leffelman v. City of Hartington, 173 Neb. 259, 113 N. W. 2d 107, this court said: "Where a jury is permitted to view the premises involved in eminent domain litigation, the result of its observations is evidence which, in arriving at a verdict, it may consider only in connection with other competent evidence." In 18 Am. Jur., Eminent Domain, § 361, p. 1004, it is stated: "* * * it is generally considered that the jury may take into consideration what they saw on the view in connection with their own knowledge and experience, and fix the damages by both evidence and view." And in 5 Nichols on Eminent Domain (3d ed.), § 17.1(3), p. 97, it is said: "The fact that the jury has had a view presents

no insuperable obstacle to the granting of a new trial on the ground that the verdict is against the evidence, or the damages inadequate or excessive." In the instant case the jury was properly instructed relative to the view of the premises. The knowledge thus acquired cannot, in and of itself, justify every finding or verdict, supply deficiencies in evidence, or provide support for estimates where the record includes none. The view of the premises by the jury in this case does not alter our conclusion.

In their brief the plaintiffs state: "The jury found the amount due appellants to be $3,200.00 and from the instruction of the Court that their view of the premises was evidence to be considered along with the other evidence, the jury apparently concluded that the $3,200.00 should be apportioned by them as they deemed required from all the evidence before them. The Court was not required to submit special findings and had it not done so the general verdict would be properly justified. The special findings surely cannot be in conflict with the general verdict since they clearly do not so appear." Section 25-1120, R. R. S. 1943, establishing that when "the special finding of facts is inconsistent with the general verdict, the former controls the latter," has no application here except to point out that special findings take precedence over a general verdict. The plaintiffs' conclusion that the jury fixed the general verdict and then somehow divided it between the two special findings is probably correct. However, to argue that the general verdict is acceptable, therefore the special findings are proper or faultless, is neither legal nor logical. A general verdict cannot rectify improper or erroneous special findings. See, Carlson v. Hanson, 166 Neb. 96, 88 N. W. 2d 140; Story v. Sramek, 108 Neb. 440, 187 N. W. 881; American Fire Ins. Co. v. Buckstaff Brothers Manuf. Co., 52 Neb. 676, 72 N. W. 1047; Culbertson Irr. & W. P. Co. v. Olander, 51 Neb. 539, 71 N. W. 298.

Actually, the circumstances of the instant case demon-

strate one of the functions of special findings in trial procedure. The purpose of a special finding is "* * * to furnish the means of testing the correctness of the verdict rendered, and of ascertaining its extent." 89 C. J. S., Trial, § 485, p. 140. It is stated in 53 Am. Jur., Trial, § 1063, p. 736: "Special questions are propounded to a jury to bring out some or all of the determinative facts which should be considered in the formation of a jury's general verdict. Such questions may aid in sifting the jury's reasons for their verdict; they may show how closely or otherwise the jury has followed the trial court's instructions, and they may, and often do, show the measure of sincerity with which the jury has considered the evidence on which the general verdict must rest if it is permitted to stand." And in 35 Nebraska Law Review 523, Special Findings and Special Verdicts in Nebraska, it is observed at page 545: "The special finding device merely permits the trial court to insure that the jury in its deliberation is not derailed from the traditional procedural track by prejudice, ignorance, favoritism or mistake."

If the special findings of a jury are not supported by the evidence or are against the weight of the evidence, or if they make it clear that the jury disregarded the evidence or the law, then it is not error to set aside the general verdict.

Though the power to set aside a verdict because it is not sustained by the evidence should be exercised with caution, it is our opinion that in the instant case the special findings and verdict were based upon something other than the evidence; that there was substantial evidence adduced during the district court trial to support a verdict somewhat different from the one returned; and that the trial court's discretion in sustaining the motion for a new trial was not abused but was exercised with regard to what was right and equitable under the law and the circumstances of this case.

The judgment of the trial court sustaining the de-

fendant's motion for a new trial should be and hereby is affirmed.

AFFIRMED.