BASIL O. BENTZ AND VERA A. BENTZ, HUSBAND AND
WIFE, APPELLEES, V. NEBRASKA PUBLIC POWER
DISTRICT, A PUBLIC CORPORATION AND POLITICAL
SUBDIVISION OF THE STATE OF NEBRASKA, APPELLANT.
320 N.W.2d 763

Filed June 11, 1982.   No. 44175.

Kelley, Wallace, Scritsmier, Moore, Romatzke & Byrne, P.C., for appellant.

Christensen Law Offices, P.C., for appellees.

Heard before KRIVOSHA, C.J., BOSLAUGH, MCCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

This matter originated as an eminent domain proceeding brought by the appellant, Nebraska Public Power District (NPPD), seeking an easement for the construction and maintenance of an electrical transmission line across property owned by Basil and Vera Bentz, appellees herein. Following a jury verdict, the District Court of Nebraska, Fourteenth Judicial District, in and for Chase County, granted the motion of the appellees for new trial. We find the trial court erred in doing so, and reverse with directions to reinstate the verdict and to enter judgment thereon.

This action has proceeded solely upon the issue of determining the damages sustained by appellees' property. The easement acquired by NPPD includes all rights of ingress and egress across the right-of-way for maintaining and inspecting a 115,000-volt transmission line which connects substations at Grant, Nebraska, and near Enders, Nebraska. The easement reserved the right to irrigate within the easement right-of-way so long as irrigation equipment is kept at least 10 feet from the conductor poles. The award of the appraisers appointed by the county court was challenged by NPPD, which appealed from the allowance to the District Court. Trial before a jury was had on the issue of the difference in value of the property before and after the taking, and including crop damage, fence damage, and abstracting expenses. At

trial, various witnesses were called to testify as to the nature of the property, the uses to which it was being put, and the potential for irrigation of the property. The evidence adduced indicates that the Bentz ranch consists of approximately 5,953 acres in Chase County. A stream runs through the ranch for a distance of 6½ miles, with a hay meadow situated along the creek. The balance of the property consists of uncultivated pastureland and grasslands. Witnesses testified that the Bentz property had hay meadow of between 400 to 1,000 acres, pastureland of from 3,260 to 5,247 acres, and property with irrigation potential ranging from 632 to 1,710 acres. The witnesses also expressed varying opinions as to whether the easement eliminated all the irrigation potential or whether alternative irrigation methods could be used on the property. Four witnesses, including Basil Bentz, testified at trial concerning the amount of damage resulting to the property, with estimates ranging from $74,000 to $297,200. In addition to the testimony and exhibits adduced at trial, the jury was allowed to view the property after receiving instructions from the court. The issue was submitted to the jury, which returned a verdict in favor of the appellees in the amount of $50,000.

On June 9, 1980, a motion for new trial was filed by the appellees, challenging the adequacy of the jury verdict. After a hearing, the District Court granted the motion, finding that the verdict was outside the evidence. NPPD has appealed to this court, alleging that the District Court erred in its finding and in granting a new trial to the appellees.

It is the appellant's contention that no tenable legal cause existed for the action taken by the trial court in rejecting the jury verdict and that the order of the court constitutes an abuse of discretion and should be reversed. Appellees, on the other hand, contend that the granting of a new trial is committed to the discretion of the trial court and should not be

interfered with by this court on appeal unless a clear showing is made that the trial court abused its discretion.

It appears appropriate to again reexamine the rules which govern the District Court in considering motions for new trial in actions involving jury trials and the rules which govern our review of errors assigned thereon. In *Greenberg v. Fireman's Fund Ins. Co.,* 150 Neb. 695, 35 N.W.2d 772 (1949), we considered the issue, recognizing the "lack of clarity and consistency in our many decisions dealing with these questions." *Id.* at 699, 35 N.W.2d at 776. In *Greenberg* we held that where a party has sustained the burden and expense of a trial and has succeeded in securing the judgment of a jury on the facts in issue, the integrity of the jury system requires that he be allowed to keep the benefit of the verdict unless there was *prejudicial error in the proceedings.* "A new trial is to be granted for a *legal cause* and where it appears that a legal right has been invaded or denied. A new trial is not to be granted for arbitrary, vague, or fanciful reasons. Tingley v. Dolby, [13 Neb. 371, 14 N.W. 146 (1882)]; Missouri Pacific Ry. Co. v. Hays, 15 Neb. 224, 18 N.W. 51 [(1883)]; Wagner v. Loup River Public Power District, [150 Neb.] 7, 33 N.W.2d 300 [(1948)]." (Emphasis supplied.) *Id.* at 701, 35 N.W.2d at 777.

This standard of review of motions for new trial was restated by our opinion in *State v. Wixson,* 175 Neb. 431, 122 N.W.2d 72 (1963), a condemnation action. On conflicting evidence ranging from an opinion that there was a benefit of $1,420 to a loss of $10,030, a verdict was rendered by the jury in favor of the landowner for $10,000. The State filed a motion for new trial, which was sustained, and the jury's verdict was set aside. On appeal, this court reversed the District Court, citing *Greenberg v. Fireman's Fund Ins. Co., supra,* on the ground that: " 'A new trial is to be granted for a legal cause and

where it appears that a legal right has been invaded or denied.' " *Id.* at 442, 122 N.W.2d at 78.

More recently, in *Kremlacek v. Sedlacek,* 190 Neb. 460, 209 N.W.2d 149 (1973), we approved the granting of a new trial because a juror took an unauthorized view of the scene of an intersectional collision. We observed that a new trial may not be granted for arbitrary, vague, or fanciful reasons, but held that a motion for new trial, because of alleged juror misconduct, is addressed to the sound discretion of the trial court. The question in *Kremlacek* turned on whether the evidence was sufficient to sustain the finding of the trial court that prejudicial error occurred; we held it did. See, also, *State v. Woodward,* 210 Neb. 740, 316 N.W.2d 759 (1982).

The rule to be distilled from these cases is, as we said in *Wixson, supra,* that the discretion of the trial court in ruling on motions for new trial is only the power to apply the statutes and legal principles to all facts of the case and grant a new trial only where legal cause exists. A trial judge may not grant a new trial merely because he reached a different conclusion than did the jury.

With that rule in mind, we now direct our attention to the evidence and verdict in this case.

It is the general rule in this jurisdiction that the burden of showing the damages which the landowner will suffer rests upon him, while the burden is on the condemnor to show matters which tend to reduce or mitigate the damages. *Leffelman v. City of Hartington,* 173 Neb. 259, 113 N.W.2d 107 (1962); *Twenty Club v. State,* 167 Neb. 37, 91 N.W.2d 64 (1958); *Platte Valley Public Power & Irr. Dist. v. Armstrong,* 159 Neb. 609, 68 N.W.2d 200 (1955).

In a condemnation action tried before a jury, the presiding judge rules on the admissibility of evidence and other questions of law, while the jury determines questions of fact such as the value of the property taken. 30 C.J.S. *Eminent Domain* § 286(2)

(1965). In this regard, expert opinion evidence in a condemnation case is to be considered and weighed by the trier of fact like other testimony. It is only advisory in nature and is not binding upon the jury. *Iske v. Omaha Public Power Dist.*, 185 Neb. 724, 178 N.W.2d 633 (1970); *Langdon v. Loup River Public Power District*, 144 Neb. 325, 13 N.W.2d 168 (1944).

Generally, either lay or expert witnesses may be used to testify as to the value of a tract of land taken or the value of the remainder thereof immediately before and immediately after the taking, if proper foundation is laid showing familiarity with the property, the weight and credibility of the testimony being for the jury. *Medelman v. Stanton-Pilger Drainage Dist.*, 155 Neb. 518, 52 N.W.2d 328 (1952).

The amount of damages sustained in an eminent domain action is peculiarly of a local nature and normally is to be determined by the jury; this court will not ordinarily interfere with the verdict, if evidence is conflicting, unless clearly wrong. *Sayer Acres, Inc. v. Middle Republican Nat. Resources Dist.*, 205 Neb. 360, 287 N.W.2d 692 (1980); *Iske v. Omaha Public Power Dist., supra; State v. Dillon*, 175 Neb. 444, 122 N.W.2d 223 (1963); *Kennedy v. Department of Roads and Irrigation*, 150 Neb. 727, 35 N.W.2d 781 (1949); *Wahlgren v. Loup River Public Power District*, 139 Neb. 489, 297 N.W. 833 (1941).

In addition, where a jury is permitted to view the premises involved in eminent domain litigation, the result of its observations is evidence which, in arriving at a verdict, it may consider in connection with other competent evidence. *Leffelman v. City of Hartington, supra; Stull v. Department of Roads and Irrigation*, 129 Neb. 822, 263 N.W. 148 (1935).

The appellees' construction of Nebraska case law urges us to adopt the rule that in condemnation cases the verdict returned by the jury must always fall within the range of estimates testified to by the witnesses at trial. Representative of the cases cited

for this proposition is *Wagner v. State,* 176 Neb. 589, 126 N.W.2d 853 (1964). In *Wagner,* the District Court granted the condemnor's motion for new trial after a $3,200 verdict was returned in favor of the condemnees, on the basis that the jury award was higher than the range of estimates given by the parties' witnesses. This court affirmed the District Court, holding that a general verdict based on inconsistent special findings of fact cannot stand. That is not the case in this action; in any event, to the extent that *Wagner* may be inconsistent with this opinion, it is overruled.

We are more persuaded by the rationale found in *Chaloupka v. State,* 176 Neb. 746, 127 N.W.2d 291 (1964), a condemnation case in which the jury returned a verdict of $1,170. The trial court granted an additur of $2,000 for the reason that the verdict failed to reflect compensation for loss of access to a portion of plaintiff's property. This court reversed, Judge Spencer writing: "Essentially, the problem herein is one of the credibility of the witnesses and the weight to be given to their testimony. This is solely a matter for the jury. We may not agree with the conclusion reached, but where there is any evidence to support a jury's verdict, it is not the court's function to weigh the evidence to determine whether it would have returned a different verdict." *Id.* at 755, 127 N.W.2d at 297-98.

To hold otherwise, by adopting the rule urged by the appellees, would totally eviscerate the substantial body of law represented by NJI 1.42, which informs juries that they may or may not adopt the conclusions of expert witnesses, according to the best judgment of the jury. We are not prepared to do this and render that jury instruction meaningless.

The case law as developed in this jurisdiction makes it clear that in eminent domain proceedings, the jury is not required to accept as conclusive the estimates of value made by the witnesses at trial.

See, also, *Samuelson v. Central Nebraska Public Power and Irr. Dist.,* 125 F.2d 838 (8th Cir. 1942). Such opinions are to be used only to aid the jury in arriving at a proper conclusion under the circumstances. When the evidence, including the inferences the jury might draw from its view, is conflicting, as it was in this case, the jury verdict should not be set aside unless clearly wrong. The jurors are the judges of the credibility of the witnesses and the weight to be given their testimony. See *Kennedy v. Department of Roads and Irrigation, supra.*

In the present case, the jury was informed by the witnesses as to the terrain of the Bentz property, soil condition, and adaptability of various types of irrigation systems. Basil Bentz testified that he had no present intention to develop irrigation on his property and was content to ranch the property during his lifetime. There was a wide divergence in the testimony as to how the easement would affect the irrigation potential of the property and its relationship with the depreciation in value of the property.

While the evidence may have sustained a larger verdict than rendered by the jury, the evidence adduced was sufficient to sustain the verdict rendered. Jurors are accorded great latitude, as the trier of fact, in the consideration of the testimony, and their verdict is not required to be limited to the range of estimates opinioned by the witnesses at trial. For this reason we must conclude that the jury verdict was not clearly erroneous and determine that it was error on the part of the District Court to find that the jury verdict was outside the evidence as adduced. The order of the District Court in granting a new trial to appellees is reversed; the jury's verdict is to be reinstated and judgment entered thereon.

REVERSED AND REMANDED WITH DIRECTIONS.

WHITE, J., dissenting.

However stated, the majority now adopts a rule in real estate appraisal cases that accords to the jury's

view an almost mystical quality. The viewing of the property or, rather, the personal impressions of a jury or a fact finder during the viewing are not capable of review by this court. In doing so, we have removed a yardstick used by trial judges to determine whether a verdict is within the range of the evidence.

The majority has overruled, indeed, the clear Nebraska precedent of *Wagner v. State,* 176 Neb. 589, 126 N.W.2d 853 (1964), which is directly contrary to the result reached here. *Chaloupka v. State,* 176 Neb. 746, 127 N.W.2d 291 (1964), on which the majority relies, is not particularly helpful to the majority. In that case we reversed the trial court's order granting a motion for new trial. The verdict, however, was within the extremes of the lay and expert witness testimony as to value. It did not address the question in this case, and the extended discussion in that case of the magic of a jury's view was and is largely dicta.

The majority has also cast us into a minority position among the many appellate courts which have considered this question. See Annot., 1 A.L.R.3d 1397 at 1434 (1965).