676 NEBRASKA REPORTS. [Vol. 52

American Fire Ins. Co. v. Buckstaff Bros. Mfg. Co.

AMERICAN FIRE INSURANCE COMPANY OF NEW YORK V.
BUCKSTAFF BROTHERS MANUFACTURING COMPANY.

FILED NOVEMBER 18, 1897. No. 7585.

Review: SPECIAL FINDING: INSUFFICIENCY OF EVIDENCE. The judgment in this case being dependent upon a special finding manifestly unsupported by the evidence is reversed.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Reversed.*

*Jacob Fawcett, Stevens & Cochran, Greene & Breckenridge,* and *C. J. Greene,* for plaintiff in error.

*Charles O. Whedon, contra.*

RYAN, C.

The Buckstaff Brothers Manufacturing Company, a corporation, began this action in the district court of Lancaster county for the recovery of the amount of damage which it alleged it had sustained by the destruction by fire of certain property covered by two policies of insurance issued by the American Fire Insurance Company of New York. There was a verdict in accordance with the prayer of the petition and the insurance company prosecutes this proceeding in error to reverse the judgment thereon rendered. In the discussion of the case we shall designate the above named manufacturing company as plaintiff and the insurance company as defendant, conformably with their relations to the case at its inception.

The property insured was described in the policy under three items, upon each of which a certain amount of insurance was placed, as shown by the following language employed in both policies:

"$225 on its one-story gravel and board roof building, all adjoining and communicating, and occupied by the assured as a boiler and engine house, brick machinery room, clay-mixing rooms, and dry tunnels building.

"$75 on boilers, foundations, settings, and iron smoke-stack, engines, foundations, and settings, pumps and all their immediate connections while contained therein.

"$700 on fixed and movable machinery of all kinds (except engines, boilers, and pumps), shafting, belting, gearing, hangers, pulleys, conveyers, brick machines, clay crushers, pug mills, iron cars, trucks, tracks, pallets, blowers and fans, tools, implements, millwright work, steam and water pipes, while contained therein."

It was averred in the petition that the property insured was all real property, and at the date of the policies until the time of the fire was used in the process and business of manufacturing brick, and that said property constituted a brick manufactory at the time it was burned. The contentions in the case which we shall consider have reference to the above averments, that the property described in the three items noted in the policies was real property at the time of its destruction. To an understanding of the bearing of the claim of plaintiff that this property was realty, it is only necessary to quote three of the instructions given by the district court in the trial of the case, which instructions are as follows:

"7. A statute of this state provides that 'whenever any policy of insurance shall be written to insure any real property in this state against loss by fire,  *  *  *  and the property insured shall be wholly destroyed, without criminal fault on the part of the insured or his assigns, the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured, and the true amount of loss and measure of damages.' This statute was enacted and based upon sound principles of public policy, and not upon consideration of possible benefits or disadvantages to any individual or corporation.

"8. The parties to an insurance contract are incompetent and incapable in law to make any stipulation or agreement in the policy, or to do any act or acts the effect of which is to annul or abrogate the provisions of this

statute. If, therefore, from the evidence in this case, under the principles of law stated in these instructions hereinafter, you shall find and determine that at the time said insurance contracts,—the policies sued on,—were entered into between plaintiff and defendant, and when the fire occurred, the property described and insured in said second and third items was, as a matter of fact, 'real property,' and was by said fire wholly destroyed within the meaning of said statute, then plaintiff is in this action entitled to recover the full amount of the insurance written on said items, irrespective of any qualifications thereof in the policies as 'personal property,' irrespective of the actual value of said property at the time of the fire, and notwithstanding the facts that plaintiff entered into an arbitration to ascertain the amount of actual loss on said second and third items, and that the award found that the actual damage sustained by plaintiff thereon from said fire to be less than the total insurance written on said property.

"9. Originally all the property described in said second and third items of said policies was 'personal property,'—that is, before the different articles therein named were by the owner made part of his brick manufactory, said articles were personal property because not connected with the real estate. Whether, at the time the policies sued on were issued, and when the fire occurred, said property described and insured in said second and third items of said policies was actually real or personal property, is a question of fact which the jury in this action must determine from the evidence touching that matter, applying thereto the principles of law now stated."

There was submitted to the jury certain questions, among which, with its answer constituting a special finding, was the following: "Under the law as stated by the court, and from the evidence in this case, what do you say and find the property described and insured in the second and third items of the policies was, when

insured, and at the time of the fire,—real property, or personal property?   Answer: Real property."

The nature of a portion of the property included in the third item of the policy was described in the testimony of J. A. Buckstaff, president of plaintiff, as well as the original cost of each article.   We have not been able to find in the bill of exceptions any basis established by the evidence of plaintiff as to the value of these articles more satisfactory than the original cost, and therefore, to illustrate our views, we shall make use of this class of evidence, unsatisfactory though it might be for other purposes.   There were 22,000 pallets which cost 14 cents each, in all $3,080.   These were wooden trays upon which unburned bricks were placed for convenience in handling them.   There were 750 cars which cost $13.30 each, or a total of $9,975.   There were 280 feet of manilla rope which cost $22.40.   There were fifty-one iron tray wheelbarrows which cost $3.50 each, or in the aggregate $168.50.   There was a schedule of tools, which in the bill of exceptions covers three pages.   The total cost of these tools was $229.54.   They consisted of saws, spirit levels, augers, drills, chisels, hammers, dies, monkey-wrenches, etc.   The total cost of all the articles above indicated was $13,475.44.   The verdict was for $2,234.50.

It appears that about the time this action was begun there were twenty-four other suits, instituted against as many different insurance companies, for the recovery of damages sustained by reason of the same fire which occasioned the damages sued for in this case, and that all these suits were tried on practically the same evidence. The above personal property was therefore but a comparatively small fraction of the property destroyed, and it is probably owing to this fact that the recovery was claimed under the statute as for the total destruction of real property.   This case, however, comes before us unaccompanied by any other, and must be considered as though no other insurance on the property had ever existed.   The result of this on one hand is, that as the

amount found by the jury was very much less than the
finding of loss by the arbitrators, the questions presented
with respect to this arbitration cannot profitably be con-
sidered. On the other hand, the cost of the property
which we have above considered is disproportionately
in excess of the verdict, from which it results that no
remittitur can enable plaintiff to secure an affirmance
of a portion of the judgment recovered in the district
court. The special finding, that all the property in-
cluded in the third item of the policies sued on was real
property, was so manifestly unwarranted, that the gen-
eral verdict founded thereon cannot be permitted to
stand. The judgment of the district court is accordingly
reversed.

REVERSED AND REMANDED.