IN RE ESTATE OF ALAN BAER, DECEASED.
THEODORE G. BAER, PERSONAL REPRESENTATIVE OF THE ESTATE OF ALAN BAER, DECEASED, APPELLEE, V.
DOUGLAS COUNTY, NEBRASKA, APPELLANT.
735 N.W.2d 394

Filed July 13, 2007.   No. S-06-372.

Stuart J. Dornan, Douglas County Attorney, and Bernard J. Monbouquette for appellant.

Robert J. Murray, Angela M. Pelan, and Kyle Wallor, of Lamson, Dugan & Murray, L.L.P., for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Under Nebraska law, inheritance taxes are imposed upon contingent bequests at the highest rate which would be possible on the happening of any of the contingencies.[1] In this case, inheritance taxes were assessed and paid on various contingent bequests in the distribution of the estate of Alan Baer (the Estate). Slightly less than 2 years after the original tax determination and payment, the personal representative of the Estate filed a "Protective Claim for Refund of Inheritance Tax," asserting that the contingencies of the bequests were unlikely to occur and that the taxes paid should be refunded to the

---

[1] Neb. Rev. Stat. § 77-2008.01 (Reissue 2003).

Estate. Douglas County objected. After an informal hearing in which no exhibits were offered into evidence or formal testimony adduced, the court granted the refund. Douglas County appeals.

## BACKGROUND

The record of the proceedings below consists of the Estate's motion for a refund with two attached tax worksheets, the court's order granting the refund, and 12 pages transcribing the discussion of the parties with the county judge concerning the refund request. The parties agree that no evidentiary hearing was held on the matter and that no evidence was formally adduced to support the Estate's motion.

In their appellate briefs, the parties explain that on or about November 5, 2003, $99,165 was paid in inheritance taxes on bequests contingent upon Comoretel, a company being sold at a profit before the death of Baer's surviving spouse. The personal representative's "Protective Claim for Refund of Inheritance Tax" was filed with the county court on August 4, 2005. In support of the claim for a refund, the personal representative asserted that although Baer's spouse was still alive, it was a "virtual certainty" that Comoretel would never be sold at a profit.

The bequests themselves are not in the record, but according to the parties' briefs, they are found in "Article VI, Item Two, Paragraph (I) of the Alan Baer Revocable Trust of February 9, 1996."[2] According to the briefs, the trust states in relevant part:

> (I) In the event that Settlor's interest in Comoretel (a private equity interest) is sold and a profit realized, as determined in the sole and absolute discretion of Trustee, Trustee shall distribute outright in amounts and to those individuals set out below in the order set forth herein and with each specific bequest having to be fully funded before the next listed bequest is funded. In the event any of these bequests are not funded prior to the death of [Baer's spouse], they shall automatically lapse.[3]

---

[2] Brief for appellee at 6. Accord brief for appellant at 4.

[3] *Id.*

The trust names the various contingent beneficiaries and the specific amount to be paid to each of those beneficiaries if the contingency occurs. The inheritance worksheets, prepared and signed by the personal representative, reflect the contingent beneficiaries and calculated inheritance tax as if the contingency had occurred and the specified amounts had been paid out.

At the hearing on the Estate's motion, the personal representative explained that the reason the contingency would likely never occur is because from the time of its inception, Comoretel had never operated at a profit. The personal representative admitted, however, that there was a remote possibility that the company's profitability could change. Because of this remote possibility, the personal representative suggested that the Estate would be willing to file an annual report with the county attorney's office to keep it informed as to whether the contingency had occurred. The personal representative expressed concern that if the refund were not granted at that time, pursuant to his pending motion, then the refund would later be barred by the statute of limitations for refunds of "erroneous payment[s]" found in Neb. Rev. Stat. § 77-2018 (Reissue 2003).

The county attorney argued at the hearing that anything was possible and that the value of the company could go up. The county attorney offered to put the taxes paid on the contingent bequests into an interest-bearing investment for the benefit of the beneficiaries, as allowed by § 77-2008.01. The county attorney did not believe that the statute of limitations found in § 77-2018 was of any concern because the payment of taxes on the contingent bequests was not "erroneous."

The county court granted the personal representative's motion and ordered a refund of the taxes paid on the contingent bequests. The court further ordered that until the contingency became "impracticable or impossible," the trustees of Baer's revocable trust must make annual reports to the county attorney's office to inform that office whether the contingency of the trust had occurred. In the event that the contingency occurred, the court ordered that the trustees would repay the refunded tax amount with interest pursuant to Neb. Rev. Stat. §§ 77-2010 (Reissue 2003) and 45-104.01 (Reissue 2004).

## ASSIGNMENTS OF ERROR

Douglas County assigns that the county court erred in (1) ordering a redetermination of inheritance tax, and the resulting refund of $99,165 to the heirs of Baer's estate, based on the court's finding that the contingent bequests of article VI, item two, paragraph (I), of Baer's trust would never be funded; (2) finding that the statute of limitations of § 77-2018 applies to inheritance taxes paid on contingent bequests of article VI, item two, paragraph (I), of Baer's trust; and (3) finding that the contingent bequests of Baer's trust will not be fulfilled.

## STANDARD OF REVIEW

The scope of review in an appeal of an inheritance tax determination is review for error appearing on the record.[4] When reviewing a judgment for errors appearing on the record, the inquiry is whether the decision conforms to the law, is supported by competent evidence, and is neither arbitrary, capricious, nor unreasonable.[5]

## ANALYSIS

The taxes in issue were calculated pursuant to § 77-2008.01, which states that when property is bequeathed in a manner subject to inheritance taxes, but the bequest is contingent, the tax "shall be imposed upon [the contingent bequest] at the highest rate which, on the happening of any of the contingencies or conditions, would be possible under the provisions of Chapter 77, article 20." Section 77-2008.01 further provides that on the happening of a contingency by which the property is transferred to a party for whom the tax rate is less, the party "shall be entitled to a redetermination of the tax and to a return by the county treasurer . . . of so much of the tax imposed and paid as equals the difference between the amount imposed and paid and the amount which such person, corporation, or institution should pay." When payment of a tax on a contingent request is made pursuant to § 77-2008.01, the county court is authorized to direct the county treasurer to invest the tax proceeds in U.S.

---

[4] *In re Estate of Reed*, 271 Neb. 653, 715 N.W.2d 496 (2006).

[5] *Id.*

Treasury bonds and similar investments, and if the tax is rede-termined, the refund includes the interest on the sum refunded, while the balance goes to the general inheritance tax fund.[6]

Notwithstanding all of those provisions, the court also has the authority, on written application of one of the inheritance taxpayers, "to determine a final inheritance tax on any prop-erty devised, bequeathed, or otherwise transferred, based upon the probabilities at the time of the decedent's death rather than taxing the property at the rates specified in such sections."[7] Alternatively, a contingent beneficiary may elect not to pay the tax resulting from the contingent interest until the contingency has occurred, but the beneficiary must then post a bond with the county court for an amount not to exceed two times the amount of the estimated tax.[8]

We note, in passing, that in this case, the personal represen-tative of the Estate filed the motion for a refund in the belief that if it was not made within 2 years, the Estate would be barred from obtaining a refund by the 2-year statute of limita-tions found in § 77-2018, regardless of whether the contingency would ever occur. The parties, on appeal, disagree about the applicability of § 77-2018. However, § 77-2018 is applicable only to inheritance tax "paid erroneously," and a tax paid at the correct rate, pursuant to statute, is not paid erroneously. The parties do not argue, in this case, that the inheritance tax ini-tially paid was incorrectly determined, based on § 77-2008.01. This is not a case of erroneous payment. Rather, any refund available to the Estate in this case is necessarily based on the redetermination provision of § 77-2018.05.

The court apparently relied on § 77-2018.05 for its authority to issue its order of redetermination and refund in accordance with the probabilities, rather than the possibilities, of the contin-gencies. Section 77-2018.05 states in full:

> Notwithstanding sections 77-2001 to 77-2039, the court shall have the authority, upon the written application of

[6] § 77-2008.01

[7] Neb. Rev. Stat. § 77-2018.05 (Reissue 2003).

[8] Neb. Rev. Stat. § 77-2009 (Reissue 2003).

any of the parties subject to the tax imposed under such sections, to determine a final inheritance tax on any property devised, bequeathed, or otherwise transferred, based upon the probabilities at the time of the decedent's death rather than taxing the property at the rates specified in such sections.

We note that § 77-2018.05 does not expressly authorize the county court to redetermine and order refund of a tax already assessed and paid, as opposed to making a determination based upon probabilities in the first instance. Furthermore, there is some question whether the personal representative's proposal to keep the county informed of the status of the contingency, and the court's decision to refund the tax subject to repayment, is consistent with the directive in § 77-2018.05 to determine a "final" inheritance tax based upon the probabilities at the time of the decedent's death. But we do not reach these issues in this proceeding because of a more fundamental problem with the county court's order.

Assuming, without deciding, that the county court had the statutory authority to issue an order redetermining and refunding taxes already assessed, subject to repayment, we find that the county court's order in this case was unsupported by competent evidence. As already mentioned, the record does not contain the bequests in issue or any evidence as to the probability that the contingency of the bequests will occur. All that is reflected by the record is the informal discussion of the attorneys with the county court. The parties agree that the record is a full reflection of what occurred below. The personal representative admits that the Estate did not present formal evidence or testimony to the county court to support its motion.

Generally, it is the appellant's burden to present a record to support the errors assigned, and in the absence of a complete bill of exceptions, it is presumed that an issue of fact raised by the pleadings was sustained by the evidence and that it was correctly determined.[9] Stated another way, "[i]n the absence of a record of the evidence considered by the court, it is presumed

[9] *Blanco v. General Motors Acceptance Corp.*, 180 Neb. 365, 143 N.W.2d 257 (1966).

that the order of the trial court was supported by the evidence and was correct."[10]

■ But the reason for this rule is to ensure that this court reviews the case upon the evidence actually received and considered in the trial court.[11] A party's brief may not expand the evidentiary record.[12] In this case, it is clear that the inadequacy of the record is due to the failure of the party with the burden of proof below to present evidence. The appellant met *its* burden to present this court with a complete bill of exceptions containing the evidence relied upon by the trial court. The aforementioned presumption, that the order of the trial court was supported by the evidence, does not apply to this case.

■ It is clear from the record and admissions of the parties that the county court's determination was made without the benefit of evidence supporting the allegations of the Estate. As we have stated before, we will reverse a judgment which depends on a finding of fact that was manifestly unsupported by the evidence.[13] While under our clearly erroneous standard of review, we consider the evidence in the light most favorable to the successful party, evidence not made part of the record cannot be given a favorable reading, nor can any beneficial inferences be deduced therefrom.[14] There was no competent evidence to support the county court's judgment in this case. Accordingly, we reverse the judgment of the county court.

REVERSED.

---

[10] *Keystone Ranch Co. v. Central Neb. Pub. Power & Irr. Dist.*, 237 Neb. 188, 192; 465 N.W.2d 472, 476 (1991).

[11] *State v. Jacobsen*, 194 Neb. 105, 230 N.W.2d 219 (1975).

[12] *Home Fed. Sav. & Loan v. McDermott & Miller*, 243 Neb. 136, 497 N.W.2d 678 (1993).

[13] *American Fire Ins. Co. v. Buckstaff Bros. Mfg. Co.*, 52 Neb. 676, 72 N.W. 1047 (1897). See, also, *Board of Regents v. Thompson*, 6 Neb. App. 734, 577 N.W.2d 749 (1998).

[14] *Home Fed. Sav. & Loan v. McDermott & Miller, supra* note 12.