IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

WOLVERTON V. WOLVERTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

TERRENCE L. WOLVERTON, APPELLEE,

V.

COLLEEN J. WOLVERTON, APPELLANT.

Filed June 25, 2019.    No. A-18-853.

Appeal from the District Court for Stanton County: JAMES G. KUBE, Judge. Affirmed.

Lindsey Moran Bryant and Shane J. Placek, of Sidner Law, for appellant.

Jason S. Doele, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellee.

RIEDMANN, ARTERBURN, and WELCH, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Colleen J. Wolverton appeals from a decree of the district court for Stanton County, dissolving her marriage to Terrence L. Wolverton and dividing the marital estate between the parties. Colleen argues that the district court abused its discretion in classifying the marital property and dividing the marital estate. We affirm the district court's decree.

## II. BACKGROUND

Colleen and Terrence were married in May 2007. In July 2016, Terrence filed a dissolution complaint, asserting that the marriage was irretrievably broken. Due to various delays, a trial was not held until April 2018. At trial, Colleen proceeded pro se, while Terrence was represented by counsel.

Throughout the trial, Terrence testified regarding various assets he believed were part of the marital estate including land, property, cash, and bank accounts, as well as liabilities associated with those assets. Terrence testified that the couple owned multiple plots of land during their marriage. He indicated that they owned a parcel of land by Battle Creek, Nebraska, that they farmed, and they rented out land jointly owned near Pilger, Nebraska (Pilger property), as well as land west of Pilger referred to as Wood Duck. Terrence also stated that Colleen inherited land near Wisner, Nebraska, prior to their marriage. Terrence requested that Colleen be given the Pilger property and its mortgage, and that he be awarded the Battle Creek and Wood Duck properties.

Terrence also testified regarding various property and cash that he believed were part of the marital estate. He identified multiple vehicles and pieces of farm equipment acquired during the marriage including an 8520 John Deere Tractor (Tractor) purchased in June 2009. The Tractor had a retail value of $147,000, but was purchased for $134,500, after the couple received a trade-in credit for a tractor Colleen owned prior to their marriage. Terrence requested Colleen be given the Tractor which was valued at $63,740 at the time of the trial. He proposed that Colleen receive a premarital credit of $5,240 to represent the trade-in credit they received when they purchased the Tractor, resulting in a total Tractor value of $58,740. (This miscalculation is addressed later in this opinion.)

Terrence also testified regarding a home that Colleen purchased for her daughters in West Point, Nebraska (West Point home), during the marriage. Colleen purchased the West Point home in June 2016 and named her two daughters on the deed. According to Terrence, Colleen withdrew $100,000 from the couple's Citizens National Bank account number 8789 (Citizens account 8789), and made the notation "home" on the bank statement next to the withdrawal. Colleen then deposited $100,000 in a Charter West Bank account owned in her name on the same day she withdrew the funds. Terrence also testified that Colleen paid the water and electricity deposit on the West Point home. He requested the district court assign Colleen the West Point home and the $100,000 as part of its division of the marital estate.

Additionally, Terrence testified that he counted over $25,000 in cash in the couple's safe when he retrieved his personal documents from it. He requested that the district court assign Colleen the $25,000 he found in the safe. Further, Terrence indicated that he paid $1,662.52 to repair his vehicle. Colleen received a check from his insurance company for the car repair and cashed it, and then sent a check to Terrence for $686, which represented half of the amount received from the insurance company. According to Terrence, he also paid the $500 deductible to repair his vehicle, and requested the district court assign half of the deductible, and the remaining half of the insurance check, to Colleen in its division of the marital estate.

Terrence also described various bank and investment accounts owned by the couple during the marriage, as well as accounts that Colleen brought into the marriage, and thus were not part of the marital estate. He outlined these on his joint property statement that was received as an exhibit during trial. Due to the number of accounts described, and the complexity of the testimony, we will provide additional relevant information in the analysis section below.

Terrence also testified regarding the parties' 2016 tax liability. The couple owed $119,193 in taxes for 2016, and the district court allowed them to pay the taxes out of Citizens account 8789 prior to trial. Terrence's joint property statement allocated the tax liability evenly between the

parties. Finally, Terrence testified about the various liabilities that the couple incurred during the marriage, and liabilities that he incurred personally during the marriage, which he included on his joint property statement.

Colleen testified that she was gifted 160 acres of land near Wisner prior to the marriage. She also testified that she wanted to retain ownership of various bank and investment accounts and that she wanted Terrence to put her name back on the life insurance account he took out for her.

Colleen explained that she purchased the West Point home from savings, money she inherited, insurance proceeds she received during the marriage, and money from selling her home in Wisner. She stated that she and Terrence received a large insurance check and each took $200,000 of the proceeds. She invested $60,000 of this amount into a Securian Financial account. No other witnesses testified.

In August 2018, the district court issued its decree dissolving the parties' marriage. In its decree, the court made specific findings regarding several disputed accounts and property. The court then divided the marital estate, totaling $1,656,419, between Colleen and Terrence, with Colleen receiving $867,533 and Terrence receiving $788,886. Additional relevant information from the decree is included in the analysis section below. Colleen timely appealed.

## III. ASSIGNMENTS OF ERROR

Colleen assigns, restated, that the district court abused its discretion in its division of the marital estate by (1) including the parties' 2016 tax debt as a marital liability, (2) determining the parties' marital safe contained $25,000 in cash and assigning that value to Colleen, (3) ordering Colleen to pay half of a $500 deductible for repair of Terrence's vehicle, (4) classifying certain accounts as marital property, and (5) miscalculating the value of the parties' Tractor.

## IV. STANDARD OF REVIEW

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. This standard of review applies to the trial court's determination regarding custody, child support, division of property, alimony, and attorney fees. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue. However, when evidence is in conflict, the appellate court considers and may give weight to the fact that the trial court heard and observed the witnesses and accepted one version of facts rather than another. *Id*. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Id*.

## V. ANALYSIS

The purpose of a property division is to distribute the marital assets equitably between the parties. Neb. Rev. Stat. § 42-365 (Reissue 2016). The ultimate test in determining the appropriateness of the division of property is fairness and reasonableness as determined by the facts of each case. *Osantowski v. Osantowski*, *supra*. The equitable division of property is a

three-step process. The first step is to classify the parties' property as marital or nonmarital, setting aside the nonmarital property to the party who brought that property to the marriage. The second step is to divide the marital assets and marital liabilities of the parties. The third step is to calculate and divide the net marital estate between the parties in accordance with the principles contained in § 42-365. *Osantowski v. Osantowski, supra*.

### 1. 2016 TAX DEBT

Colleen asserts that the district court erred by including the parties' 2016 tax debt as a liability in the division of the marital estate. We agree that the debt should not have been included, but determine that it had no detrimental impact on the parties.

The district court noted in its decree that "the parties had a 2016 tax debt of $119,183. This amount was paid from a marital account at Citizens State Bank. This debt is not subject to division as it no longer exists." Yet, in exhibit A, attached to the court's decree, the court equally divided this debt, assigning $59,596 to Terrence, and $59,597 to Colleen.

The record indicates that the parties paid their 2016 tax liability prior to trial out of a marital account. Although the district court included this liability in its division of the marital estate, the court divided the liability equally between the parties; thus, it did not affect the proportion of the marital estate each party received. Accordingly, we find no reversible error in the district court's inclusion of this debt.

### 2. $25,000 CASH IN SAFE

Colleen asserts that the district court abused its discretion by determining that the parties' marital safe contained $25,000 in cash and by assigning that value to Colleen in the division of the marital estate. We find no error in the court's determination.

Terrence testified that, while he was removing personal documents from the marital safe following his separation from Colleen, he counted at least $25,000 in cash in the safe. Colleen did not offer any testimony regarding the money contained in the safe at trial; rather she testified that as to the contents of the safe "he took what he wanted to and I took what I wanted." In its decree, the district court stated that "[Colleen] argued that '$20,000 is missing from the safe and all signs point to t. wolverton. I can't believe he stoops so low and steals whenever he or his family can.'" The district court then found that the $25,000 cash in the marital safe constituted a marital asset and assigned the amount to Colleen in exhibit A attached to its order. While we note that the court stated in its decree that the $25,000 was to be divided equally, Colleen's assigned error indicates that the full amount was awarded to her, and exhibit A supports that representation. We therefore address her assigned error.

The court's determination that the marital safe contained $25,000 in cash is a clear endorsement of Terrence's testimony. Colleen offered only argument, not evidence, of the missing money. It is clear that the court accepted Terrence's testimony as credible and we find no abuse of discretion in that determination. See *Elting v. Elting*, 288 Neb. 404, 849 N.W.2d 444 (2014) (in bench trial of action at law, trial court is sole judge of credibility of witnesses and weight to be given their testimony).

### 3. $500 INSURANCE DEDUCTIBLE

Colleen argues that the district court abused its discretion by finding that there existed a $500 deductible paid by Terrence for the repair of his vehicle, and by awarding half of the value of the deductible as a marital expense. We disagree.

In its decree, the district court assigned Colleen $936 for Colleen's "portion of the Trailblazer Insurance check." This amount matches what was included in Terrence's joint property statement and was the amount to which Terrence testified as being owed to him by Colleen. Colleen did not offer any evidence on this issue. Although Colleen asserts on appeal that there was no documentation that Terrence paid the $500 deductible, Terrence's testimony was uncontroverted. Thus, upon our review of the record, we find no abuse of discretion in assessing Colleen $936 as a marital asset.

### 4. CLASSIFICATION OF NONMARITAL ASSETS

Colleen alleges that the district court abused its discretion by classifying several bank accounts as marital assets rather than nonmarital, and including them in the marital estate. Specifically, Colleen asserts that Sunbelt Securities account 0558, the $100,000 withdrawn from Citizens account 8789, Securian Financial account 0949, and LPL Financial Services account 3262 (LPL account 3262) were nonmarital accounts. We disagree.

Generally, all property accumulated and acquired by either spouse during a marriage is part of the marital estate. *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). Exceptions include property that a spouse acquired before the marriage, or by gift or inheritance. *Id*. Separate property becomes marital property by commingling if it is inextricably mixed with marital property or with the separate property of the other spouse. *Id*. If the separate property remains segregated or is traceable into its product, commingling does not occur. *Id*. The burden of proof rests with the party claiming that property is nonmarital. *Id*.

We now turn to each account Colleen alleged to be nonmarital property and determine that the district court properly concluded that she did not meet her burden to establish that the account was nonmarital.

### (a) Sunbelt Securities Account 0558

Colleen alleges that the district court erred in classifying the Sunbelt Securities account 0558 as marital property. The district court did not identify this account by name in its decree, but did include it on exhibit A as part of the marital estate awarded to Colleen. At trial, Terrence testified that he and Colleen owned the Sunbelt account and opened it in 2011. Terrence submitted account records which corroborate his testimony, and show that the account was opened in 2011 with a deposit of $7,539.64, and had a balance of $16,438.54 in December 2016, which reflects the amount Terrence requested be assigned to Colleen on the joint property statement. The extent of Colleen's evidence on this account was her testimony that she wanted "the Sunbelt that my first husband started for the grand-kids."

On appeal, Colleen asserts that the Sunbelt Securities account 0558 was started by her first husband for their grandchildren, and the account was opened with a securities transfer of $7,539.64. She further argues that because no further contributions were made and the account

grew as a result of investment earnings, the account remains premarital. If Colleen had proven that the account began as a premarital asset, we might agree. However, the evidence indicates that the account was opened in 2011, during Colleen's marriage to Terrence. While the Sunbelt records confirm the account was opened with a "securities transfer," it does not indicate the prior ownership of that security. A party's brief may not expand the evidentiary record. *In re Estate of Baer*, 273 Neb. 969, 735 N.W.2d 394 (2007). Therefore, without evidence adduced at trial that the securities transfer was a premarital asset, Colleen did not meet her burden of establishing that the Sunbelt Securities account 0558 was nonmarital. The district court did not abuse its discretion in finding it to be a marital asset.

(b) $100,000 Withdrawn From Citizens Account 8789

Colleen also argues that the district court erred in classifying the $100,000 she withdrew for the purchase of the West Point home as a marital asset and allocating it to her in the division of the marital estate. She alleges that the $100,000 used to purchase the home was nonmarital, and thus should not have been included in the marital estate. We find no abuse of discretion in the court's classification or division.

At trial, Terrence testified that Colleen withdrew $100,000 from Citizens account 8789 which the couple owned together, and deposited the money into an account solely owned by her. Colleen then purchased the West Point home for her daughters with the money in June 2016, and that she did so "for her daughters so [Terrence] could not get it." He directed the court to specific exhibits that confirmed his testimony. Colleen testified that she purchased the West Point home from savings, money from her father, proceeds from a previous house sale, as well as $47,000 from insurance proceeds the couple received. The district court found that Colleen failed to sustain her burden of proof that the $100,000 was nonmarital.

The district court specifically noted that Terrence's name was added to the Citizens account 8789 until June 2012, and significant amounts of money were withdrawn and deposited into the account while Terrence's name was on the account. Further, there were additional deposits and withdrawals from the account and no testimony was offered at trial regarding the source of the funds deposited. The court assigned $100,000 to Colleen as part of its division of the marital estate.

The record supports that Colleen withdrew $100,000 from this account, transferred it into an account in her name, and then used that money to purchase the West Point home. The record does not support a finding that Citizens account 8789 was nonmarital property, nor did Colleen establish that the funds within the account were traceable to nonmarital property. Rather, whatever separate property Colleen deposited in this account became marital property by commingling because it was inextricably mixed with marital property. See *Brozek v. Brozek*, 292 Neb. 681, 874 N.W.2d 17 (2016).

Although it is unclear exactly when Terrence was added to the account, his name first appears on an account statement in December 2007. The balance of the account at that time was $1,192.47. By January 2009, the account balance was $114,668.36. The amount of money in the account continued to fluctuate as large deposits and withdrawals were made. While some deposits and withdrawals are notated in the record as being made by Colleen, others are not.

Colleen did not attempt to trace the deposits and withdrawals in Citizens account 8789 during trial to prove that it consisted solely of nonmarital property. On appeal, she now relies upon the 181 pages of exhibit 50 in an attempt to do so. A party who offers financial records in bulk without providing a detailed explanation as to what can be extrapolated from them does so at its peril. Given Colleen's failure to direct the district court to evidence to support her position, we decline to find that the court abused its discretion in classifying the account as a marital asset.

Even if Colleen had properly presented her evidence, we find that she would not have been able to demonstrate that nonmarital funds were used to purchase the West Point home. The records from Citizens account 8789 reveal that Terrence's name was added to the account in 2007, and that significant amounts of money were deposited and withdrawn from the account during the marriage. All property accumulated and acquired by either spouse during the marriage is part of the marital estate. See *Harris v. Harris*, 261 Neb. 75, 621 N.W.2d 491 (2001). In *Harris*, the Nebraska Supreme Court determined that money earned during the marriage and deposited into one spouse's savings fund during the marriage was part of the marital estate. Thus, the money which was deposited into Citizens account 8789 was a marital asset, and the district court was correct in including it in the marital estate.

Colleen also asserts that she used $47,000 from a crop insurance payment to purchase the West Point home. She alleges that both she and Terrence received $200,000 as insurance proceeds, and each deposited their money in separate accounts. She claims she later closed the account in which she had deposited her share of the insurance proceeds and deposited the remaining amount, $47,000, into the Citizens account 8789. However, all property accumulated during the marriage is marital property. See *Osantowski v. Osantowski*, 298 Neb. 339, 904 N.W.2d 251 (2017). Thus, even if the $47,000 was part of the insurance proceeds that was deposited in Citizens account 8789 and used to purchase the West Point home, it was still marital funds.

Finally, while Colleen states in her appeal that she "did not have the benefit of representation at trial," the district court indicated in its decree that "the Court forewarned [Colleen] with respect to representing herself in going forward into trial without the assistance of legal counsel, which [Colleen] repudiated." Brief for appellant at 32. A pro se litigant is held to the same standards as one who is represented by counsel. See *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015). Accordingly, Colleen was held to the same standard as a party represented by counsel, and she failed to sustain her burden of proving that the $100,000 used to purchase the West Point home was nonmarital property.

(c) Securian Financial Account 0949

Colleen next argues that the district court abused its discretion in determining that Securian Financial account 0949 was marital property, and awarding the account to Terrence. At trial, Colleen testified that she used $60,000 from the $200,000 she received as insurance proceeds to start the account. However, as indicated above, Colleen and Terrence received the insurance proceeds during the marriage, and thus, it was marital property. Therefore, the district court did not err in determining that the account was marital and in awarding it to Terrence.

### (d) LPL Account 3262

Colleen asserts that the district court erred in classifying LPL account 3262 as marital, and awarding the account to Terrence. Colleen specifically argues that $161,868.24 of the total $507,253.28 in the account was nonmarital, and thus, should have been excluded from the marital estate. We disagree.

Terrence testified at trial that the couple opened LPL account 3262 together in 2009. When the account was opened, Terrence was listed as a beneficiary to receive 34 percent of the account; however, by May 2016, he had been removed as a beneficiary on the account. Terrence testified that the account had a beginning value of $0, but a deposit was made for $12,000 in 2011. He further testified that the value of the account in 2018 was $507,253.28. The only testimony Colleen provided regarding the account was "I would like to retain ownership of the . . . Raymond James that was formerly with LPL."

On appeal, Colleen argues that LPL account 7703 was a premarital account that had $161,868.24 in it when Terrence's name was added in August 2007. She further alleges that the couple then added marital funds into the account until 2017, when LPL account 7703 was added to LPL account 3262. She contends that the beginning balance is her nonmarital asset and should have been set aside to her as such.

The record contains 499 pages of financial statements for LPL account 7703 and 448 pages of financial statements for LPL account 3262. Colleen admits that additional evidence regarding LPL account 7703 "was not clearly identified to the court as it is nestled in between various Citizens State Bank account statements in Exhibit 50. . . . The documents are not in chronological order." Brief for appellant at 35. Exhibit 50 contains an additional 181 pages. Colleen provided no testimony to the district court explaining the interplay between LPL account 7703 and LPL account 3262 or their funding sources.

Although Colleen attempts to "connect the dots" in her appellate brief by identifying various deposits and transfers, she provided no direction to the district court. The burden was on Colleen to prove that assets within this account were nonmarital. Our review is for an abuse of discretion. A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition. *Connolly v. Connolly*, 299 Neb. 103, 907 N.W.2d 693 (2018). Given the absence of any testimony directing the court through the voluminous amount of financial documents, we cannot say the district court's classification of LPL account 3262 in its entirety as a marital asset was clearly untenable. We find no abuse of discretion in the court's classification.

### 5. MISCALCULATION OF TRACTOR'S VALUE

Colleen also assigns as error the district court's finding that the Tractor's value, after a trade-in credit of $5,240 awarded to Colleen, was $58,740. We agree.

Terrence testified that the couple purchased the Tractor in 2009 for $134,500, after receiving a trade-in credit for a tractor belonging to Colleen. Terrence indicated that the value of the Tractor was $58,740, which was the current average price of $63,740 minus a $5,240 premarital credit assigned to Colleen, which reflected the percentage of her trade-in tractor from the purchase price. The district court awarded Colleen the Tractor, with a value of $58,740.

Upon our review of the record, we find that the correct value of the Tractor is $58,500, not $58,740. We arrive at the correct value by subtracting the marital credit amount of $5,240 from the current average price of the Tractor, $63,740, which equals $58,500. Thus, we find that the district court incorrectly valued the Tractor based upon Terrence's mathematical error. However, we decline to modify the district court's decree to reflect this de minimis amount.

The division of property is not subject to a precise mathematical formula, and the general rule is to award a spouse one-third to one-half of the marital estate. See *Millatmal v. Millatmal*, 272 Neb. 452, 723 N.W.2d 79 (2006). The total marital estate, including assets and liabilities, was $1,656,419, and the district court awarded Colleen $867,533 and Terrence $788,886. Thus, regardless of the district court's error, Colleen was awarded more than half of the marital estate. Accordingly, we do not modify the district court's decree.

## VI. CONCLUSION

We find that the district court did not abuse its discretion in its classification of marital property or division of the marital estate. Although the district court did assign an improper value to the Tractor the error was nominal, and we find no abuse of discretion in the court's division of the marital estate. We therefore affirm the district court's decree.

AFFIRMED.