Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/17/2025 09:11 AM CDT

Jane E. Morris and Steven L. Morris, wife
and husband, appellants, v. Karen E. Dall,
individually and as Successor Trustee of
the Schindler Family Trust, appellee.

___ N.W.3d ___

Filed October 17, 2025.    No. S-24-621.

1. **Breach of Contract: Damages.** A suit for damages arising from a breach of contract presents an action at law.
2. **Contracts: Restitution.** Any quasi-contract claim for restitution is an action at law.
3. **Judgments: Appeal and Error.** In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.
4. ____: ____. After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.
5. **Contracts: Parties: Intent.** To create a contract, there must be both an offer and an acceptance. There must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.
6. **Breach of Contract: Pleadings: Proof.** In order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.
7. **Contracts.** It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. It must identify the subject matter and spell out the essential commitments and agreements with respect thereto.
8. ____. Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each

party to do, or permit something to be done, in consideration of the act or promise of the other.

9. **Contracts: Proof.** A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract.

10. **Contracts.** Where the promisor retains an unlimited right to decide later the nature or extent of his or her performance, the promise is too indefinite for legal enforcement.

11. **Trial.** Under Neb. Rev. Stat. § 25-1127 (Reissue 2016), in the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing party.

12. **Forbearance: Estoppel.** A claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise.

Appeal from the District Court for Douglas County: J Russell Derr, Judge. Affirmed.

Nicholas F. Sullivan, Nicholas D. Meysenburg, and Christian D. Rush, of Dvorak Law Group, L.L.C., for appellants.

Jerome J. Ortman for appellee.

Funke, C.J., Miller-Lerman, Cassel, Stacy, Papik, Freudenberg, and Bergevin, JJ.

Funke, C.J.

## INTRODUCTION

Pursuant to a purported oral agreement, Jane E. Morris and Steven L. Morris made renovations to a property owned by the Schindler Family Trust (the trust). When they were not paid for the renovations, the Morrises sued Karen E. Dall (Karen), the successor trustee of the trust. The district court denied the Morrises' claims for breach of contract, unjust enrichment, and promissory estoppel. It further denied Jane's claim for breach of fiduciary duty/accounting and declined

to find Karen personally liable for any of the claims. Because the court did not clearly err, we affirm.

## BACKGROUND

Karen and Jane are two of the beneficiaries of the trust, which was established by their parents as cotrustees. The trust owned several properties. The Morrises allege that they orally agreed to renovate one of the properties for the cotrustees. In exchange, the Morrises contend that it was agreed that the trust would reimburse them for the cost of the renovations after the property was sold. The total cost of the renovations was $27,650.49. After the cotrustees passed away and Karen became the trustee, Karen sold all of the trust's properties. The parties do not dispute that none of the trust funds were used to reimburse the Morrises for the renovations.

In April 2022, the Morrises filed this suit. They alleged claims for breach of contract, unjust enrichment, promissory estoppel, and breach of fiduciary duty/accounting.

### Evidence at Trial

A 2-day bench trial was held. There were nearly 100 exhibits and extensive testimony concerning a wide variety of family disputes. Only the information relevant to our disposition of this appeal is discussed below.

At trial, both Steven and Jane testified that in September 2013 they entered into an oral agreement with the cotrustees. Specifically, the Morrises testified that the agreement required them to renovate the cotrustees' primary residence, which is referred to as "the 51st Street property." In exchange, it was agreed that—using the proceeds from the sale of the home—the Morrises would be paid for the cost of the renovations, but not for their labor. All parties agree that no one else was present when the Morrises and the cotrustees reached the alleged agreement.

The Morrises also testified that roughly 10 conversations regarding the renovations transpired before the agreement

was actually reached. During those conversations, the Morrises stated that the cotrustees identified particular projects to be included in the renovations, such as replacing the windows, adding outlets, and replacing the carpet, a fan, and the countertops in the kitchen.

Karen's testimony did not dispute that there was an agreement between the cotrustees and the Morrises to which she was not a party. Instead, Karen testified that she had warned Jane, before the renovations began, that because of a line of credit associated with the 51st Street property, there would not be any money left from which the Morrises could be repaid.

Jane testified that she conducted all renovations from January to April 2014. Once renovations began, however, additional issues were identified, expanding the scope of the work. Specifically, it was discovered that the property had termites, and that there was no insulation in several parts of the house. As such, the Morrises repaired the parts damaged by termites and added insulation. During this time, Jane testified that she had weekly communication with her mother on the progress of the renovations and would consult with her prior to making decisions about the property.

Ultimately, the Morrises renovated "three bedrooms, a bathroom, the living room, dining room, and kitchen in the house." Exhibits 2 through 4, which were offered and received at trial, contained an itemized list of the expenses incurred by the Morrises during the renovations, along with the receipts therefrom. Steven testified that, based on his experience as a contractor, the cost of the renovations was reasonable.

There is no dispute that the renovations were done well. Several exhibits, along with testimony from various individuals, indicated that the renovations "looked beautiful."

The cotrustees passed away in 2016 and 2019, respectively. Thereafter, Jane, at times individually and at other times through her attorneys, requested that Karen reimburse the Morrises for the renovations. Karen declined to reimburse

the Morrises, again citing the line of credit associated with the 51st Street property as a reason why there would be no money left to repay the Morrises. Instead, Karen invited Jane to make an offer on the property, which she proposed would then allow the Morrises to resell the property and recoup the costs of the renovation that way.

In September 2021, Karen sold the 51st Street property for $134,950. Exhibits 7 and 73 show that the line of credit associated with the home was in the amount of $33,631.61. There was also a mortgage payoff of $68,562.29 and additional costs associated with the sale of the property. Accordingly, the trust netted a total of $21,477.73 from the sale.

As one of her first tasks as trustee, however, Karen paid the costs associated with their father's funeral. At that time, none of the properties had yet been sold, and there was no cash available in the trust. Accordingly, Karen paid for the funeral expenses out of pocket. She testified that the funeral expenses were roughly $18,000.

As such, after receiving the $21,477.73 from the sale of the 51st Street property, Karen used that amount to reimburse herself for the funeral expenses. Karen testified that she did so because it was "the intent" of the cotrustees that the line of credit associated with the property be used to cover the funeral expenses. When further questioned on this matter, she admitted that this was not required by the provisions of the trust and that the decision to reimburse herself from the proceeds of the sale of the 51st Street property had been her own, but that the decision was based on a conversation with the cotrustees.

Because of the repayment of the line of credit, the mortgage, and Karen's reimbursement, Karen testified that there was "[l]ess than $5,000" left from the sale of the house that could have been paid to the Morrises.

Additionally, the Schindler Family Trust contained a provision stating that "[t]he Trustees must give the beneficiaries

an annual accounting." As such, in addition to the requests for reimbursement, Jane requested that Karen provide a full accounting of the trust property, liabilities, receipts, and disbursements. Jane testified that Karen failed to provide the requested full accounting until one was produced during discovery for this litigation and subsequently offered at trial. For her part, Karen provided the following testimony at trial:

> Q. Okay. And it's my understanding you never provided Jane with a copy of an accounting of all of the assets and liabilities of the Trust, including personal property, machinery, and equipment, correct?
>
> A. I did not of the — of the machinery. I did of everything else, I believe.

Karen refuted Jane's assertion that she had not provided a full accounting. In support of this assertion, Karen offered the "trustee reports," which consisted of emails from Karen to the beneficiaries of the trust informing them of the status of various trust matters, including sales of properties, decisions regarding appraisals, leases on properties not sold, and claims being made against the trust.

Finally, Jane testified that in January 2022, Karen sent the beneficiaries an email indicating that all trust properties had been sold, and that, as such, the trust no longer had any assets and was to be dissolved. At trial, Karen testified that at the time she closed the trust, there was over $800,000 remaining from the sale of the trust properties, and that, accordingly, the beneficiaries of the trust, including Jane, each received roughly $80,000.

## DISTRICT COURT ORDER

The district court denied the Morrises' claim for breach of contract, finding that although there was evidence of an agreement, the terms of that agreement were not sufficiently definite and certain such that it could be a legally enforceable contract. The court took issue with the fact that the scope of

the renovations seemed to expand with little input from the cotrustees, commenting that "[s]urely, [the cotrustees] did not have a 'carte blanche' agreement" with the Morrises.

The court also denied the claim for unjust enrichment, saying that restitution for unjust enrichment could only be calculated when there was evidence of value added to the property. The court expressed uncertainty as to whether the reasonable cost of the renovations was the proper measure of value added, but, even so, there was no evidence as to whether the costs incurred by the Morrises were reasonable.

As to the claims for promissory estoppel and breach of fiduciary duty/accounting, the court addressed them in a footnote on the first page of the opinion. In doing so, the court noted that a cause of action is distinct from a "'claim for relief,'" the apparent implication being that the court believed the claims relating to promissory estoppel and breach of fiduciary duty/accounting were merely claims for relief, which related to the causes of action for breach of contract and unjust enrichment.

The court also denied all claims for attorney fees, finding that none of the claims or defenses asserted were frivolous.

The Morrises sought review by the Nebraska Court of Appeals, and we moved the matter to our docket.[1]

## ASSIGNMENTS OF ERROR

The Morrises assert that the district court erred in (1) denying their breach of contract claim, finding there was no valid contract, (2) denying their unjust enrichment claim, finding there was insufficient evidence to determine value added and whether the amount was reasonable, (3) denying their complaint without explicitly addressing their claims for promissory estoppel and Jane's claim for breach of fiduciary duty/accounting, and (4) failing to find Karen personally liable on all claims.

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

## STANDARD OF REVIEW

[1] A suit for damages arising from a breach of contract presents an action at law.[2]

[2] Any quasi-contract claim for restitution is an action at law.[3]

[3] In a bench trial of a law action, a trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless clearly wrong.[4]

[4] After a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party.[5]

## ANALYSIS

### Breach of Contract

We begin with the Morrises' assignment that the district court improperly dismissed their claim for breach of contract. All the parties acknowledge that there was an agreement between the Morrises and the cotrustees regarding renovations to the 51st Street property. The issue arises in determining whether the terms of the agreement are sufficiently clear and definite such that the agreement can be enforced.

The Morrises argue that the terms of the agreement are sufficiently definite. They point to their testimony, explaining that the agreement was for them to conduct the renovations to the 51st Street property in exchange for the cotrustees paying them the cost of renovations, excluding their labor. The Morrises assert that it matters not that the extent of the renovations expanded throughout the course of the project

---

[2] *Dietzel Enters. v. J. A. Wever Constr.*, 312 Neb. 426, 979 N.W.2d 517 (2022).

[3] *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018).

[4] *Dietzel Enters., supra* note 2.

[5] *Id*.

because there were ongoing communications between Jane and the cotrustees throughout the course of the renovations, amounting to something akin to modifications and ratifications of the agreement. It is further asserted that the cotrustees reaffirmed the agreement when they accepted the renovations and expressed their satisfaction with the same.

Karen, however, counters that the agreement is unenforceable because of the lack of essential terms. She argues that the Morrises' assertion that the cotrustees were pleased with the renovations advocates for an untenable standard for contract formation. By such a measure, Karen asserts that the Morrises could have "rebuilt the house into a five-story mansion," as long as the cotrustees were pleased with the results.[6] Karen further asserts that an intent to be bound is also insufficient absent defined and certain terms.

[5-9] To create a contract, there must be both an offer and an acceptance. There must also be a meeting of the minds or a binding mutual understanding between the parties to the contract.[7] Specifically, in order to recover in an action for breach of contract, the plaintiff must plead and prove the existence of a promise, its breach, damage, and compliance with any conditions precedent that activate the defendant's duty.[8] It is a fundamental rule that in order to be binding, an agreement must be definite and certain as to the terms and requirements. It must identify the subject matter and spell out the essential commitments and agreements with respect thereto.[9] Generally, mutuality of obligation is an essential element of every enforceable contract and consists in the obligation on each party to do,

---

[6] Brief for appellee at 7.

[7] *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

[8] *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002).

[9] *Acklie v. Greater Omaha Packing Co.*, 306 Neb. 108, 944 N.W.2d 297 (2020).

or permit something to be done, in consideration of the act or promise of the other. [10] A party seeking to enforce a contract has the burden of establishing the existence of a valid, legally enforceable contract. [11]

In this case, it cannot be said that the agreement at issue comports with those requirements.

[10] The agreement in question is entirely oral, the terms of which we know very little. By the Morrises' account, we know only that they were to renovate the 51st Street property in exchange for the cost of the renovations. However, the agreed scope of the desired renovations is unclear. The Morrises testified that the initial discussions between the Morrises and the cotrustees contemplated projects related to such things as adding more outlets and replacing the windows, carpet, a fan, and the countertops in the kitchen. However, as mentioned above, and by the Morrises' own admission, the scope of the renovations expanded well beyond that initially anticipated. Further, throughout this process, the cotrustees were not present and, instead, relied upon communications from the Morrises regarding the expanding scope of the improvements. This sort of indefiniteness precludes this court from being able to determine the precise legal liability of the parties to the contract. [12] We have before stated that where the promisor retains an unlimited right to decide later the nature or extent of his or her performance, the promise is too indefinite for legal enforcement. [13] Such is the case here. Accordingly, we determine that the district court did not clearly err in denying the Morrises' claim for breach of contract.

---

[10] *Valley Boys v. American Family Ins. Co.*, 306 Neb. 928, 947 N.W.2d 856 (2020).

[11] *Id.*

[12] See *Acklie, supra* note 9.

[13] *Valley Boys, supra* note 10.

Unjust Enrichment

We next address the Morrises' assertion that the district court erred in denying their claim for unjust enrichment.

Simply defined, "unjust enrichment" means "[t]he retention of a benefit conferred by another, who offered no compensation, in circumstances where compensation is reasonably expected."[14] Recovery under a theory of unjust enrichment may be had where recovery on an express contract theory proves not to be viable, as was the case here.[15] The rationale for allowing recovery under such circumstances is that the person who conferred the benefit is entitled to receive the "reasonable value of the benefits" that he or she conferred.[16] However, "'[t]here is no specific standard by which such reasonable value is to be determined.'"[17]

The Restatement (Third) of Restitution and Unjust Enrichment recognizes four separate measures of enrichment from the receipt of nonreturnable benefits, like those at issue here.[18] Those measures are as follows:

> (a) a value of the benefit in advancing the purposes of the defendant,
>
> (b) the cost to the claimant of conferring the benefit,
>
> (c) the market value of the benefit, or
>
> (d) a price the defendant has expressed a willingness to pay, if the defendant's assent may be treated as valid on the question of price.[19]

---

[14] Black's Law Dictionary 1771 (10th ed. 2014).

[15] See, e.g., *Bloedorn Lumber Co., supra* note 3.

[16] *Id*. at 730, 915 N.W.2d at 793.

[17] *Sorensen Constr. Co. v. Broyhill*, 165 Neb. 397, 404, 85 N.W.2d 898, 903 (1957), *modified on denial of rehearing* 165 Neb. 744, 87 N.W.2d 439 (1958).

[18] Restatement (Third) of Restitution and Unjust Enrichment § 49 (2011).

[19] *Id*. at 176-77.

We agree that, depending upon the circumstances, any of those measures could be the appropriate standard by which to determine reasonable value. Our case law reflects as much.[20]

In the present case, the parties agree that the Morrises conferred a benefit on the trust by making renovations to the 51st Street property. The parties also agree that the Morrises did not present any evidence regarding an increase in property value caused by the renovations. Instead, the dispute centers on whether the evidence of the costs that the Morrises incurred in performing the renovations was sufficient to entitle them to recover under a theory of unjust enrichment. Karen concedes that the Morrises' renovation costs could serve as a "guide toward calculating [the] increase in home value."[21] However, she construes our opinion in *Bloedorn Lumber Co. v. Nielson*[22] to mean that "only the increase in home value [is] recoverable."[23] As such, Karen argues that we should affirm the order of the district court because, at trial, the evidence showed only the costs that the Morrises incurred in performing the renovations and not the "change in home value that resulted from the renovations."[24]

We do not read *Bloedorn Lumber Co.* in the same way that Karen does. Specifically, we do not understand *Bloedorn Lumber Co.* to have marked a departure from our prior opinions allowing a claimant to recover restitution for the costs of materials or labor based solely on evidence of those

---

[20] See, e.g., *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011) (market value); *Sorensen Constr. Co., supra* note 17 (cost to claimant); *Associated Wrecking v. Wiekhorst Bros.*, 228 Neb. 764, 424 N.W.2d 343 (1988) (contract price).

[21] Brief for appellee at 11.

[22] *Bloedorn Lumber Co., supra* note 3.

[23] Brief for appellee at 11.

[24] *Id.*

costs and without evidence of change in market value.[25] In *Bloedorn Lumber Co.*, it is true that we observed that the evidence in the record showed, among other things, that one of the defendant homeowners had "admitted that . . . the countertops [in question] increased the value of the residence."[26] However, our recitation of that evidence was in response to the homeowners' argument that the district court had erred in finding that the claimant was entitled to recover under a theory of unjust enrichment "when the evidence did not show the [homeowners] were unjustly enriched."[27] In other words, we cited the admission that the countertops had increased the value of the residence as one example of the evidence supporting the district court's decision. Contrary to Karen's argument, we did not conclude that restitution could only be calculated using the increase in home value.

Turning to this case, however, we cannot conclude, under the deferential standard of review set forth above, that the district court erred in denying the Morrises' unjust enrichment claim. We note that Steven and Jane testified they completed the renovations and provided documentation regarding the cost of such renovations. Additionally, Steven testified that based upon his knowledge, training, and experience in the construction industry, the renovation costs were fair and reasonable. However, the credibility of a witness is a question for the trier of fact, and it is within its province to credit the whole of the witness' testimony, or any part of it, which seemed to it to be convincing, and reject so much of it as in its judgment is not entitled to credit.[28] Such is the case here.

---

[25] See, e.g., *Sorensen Constr. Co., supra* note 17; *Dolton Electric, L.L.C. v. Ichtertz*, No. A-23-885, 2024 WL 3948605 (Neb. App. Aug. 27, 2024) (selected for posting to court website).

[26] *Bloedorn Lumber Co., supra* note 3, 300 Neb. at 730, 915 N.W.2d at 793.

[27] *Id.* at 726, 915 N.W.2d at 791.

[28] *Fredericks Peebles v. Assam*, 300 Neb. 670, 915 N.W.2d 770 (2018).

The trial court heard the evidence and found that there was insufficient evidence that the property's value was increased or that the renovation costs were reasonable. Based upon our standard of review, we cannot find that the trial court clearly erred in this determination.

## Remaining Matters

The Morrises also assign error as to the district court's handling of their claim for promissory estoppel, Jane's claim for breach of fiduciary duty/accounting, and Karen's alleged personal liability. First, the Morrises argue that the court did not provide a reasoned basis and separate conclusions of law for dismissing their claims of promissory estoppel and breach of fiduciary duty/accounting. They also argue that the court should have found in their favor on the merits of those claims. Second, the Morrises assert that if this court finds in their favor on any of their claims, we should also find Karen personally liable for the cost of the renovations.

We begin with the first set of arguments. As the Morrises observe, in dismissing their complaint, the district court did not make specific findings regarding the promissory estoppel and breach of fiduciary duty/accounting claims. Instead, the district court mentioned those claims in a footnote on the first page of the order. The parties do not dispute that the district court's order "dispose[d] of all issues in the case" and, as such, was a final appealable order.[29] Instead, the Morrises take issue with the fact that the court "fail[ed] to address or offer separate conclusions of law on" those claims.[30]

[11] Under Neb. Rev. Stat. § 25-1127 (Reissue 2016), in the absence of a request by a party for specific findings, a trial court is not required to make detailed findings of fact and need only make its findings generally for the prevailing

---

[29] Brief for appellants at 27. See, also, Neb. Rev. Stat. § 25-1315(1) (Cum. Supp. 2024).

[30] Brief for appellants at 29.

party.[31] Where no such request has been made, the correct rule is this: If there is a conflict in the evidence, this court, in reviewing the judgment rendered, will presume that controverted facts were decided by the trial court in favor of the successful party, and the findings will not be disturbed unless clearly wrong.[32] A general finding that the judgment should be for a certain party warrants the conclusion that the trial court found in the party's favor on all issuable facts.[33] These rules are not made inapplicable merely because, in addition to a general finding, the trial court also mentioned certain matters specifically.[34] Both the general findings and the specific findings are subject to review for clear error, and the finding of clear error of either may be grounds for reversal.[35]

Here, neither party requested that the court make specific findings of fact and conclusions of law as provided in § 25-1127, and, as such, the Morrises are not entitled to such findings. Accordingly, we now assess whether the court erred in its determination on the merits of those two claims.

[12] First, we review the matter of promissory estoppel. In Nebraska, a claim of promissory estoppel requires a plaintiff to show: (1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise.[36] The promise need not

---

[31] *Cullinane v. Beverly Enters.- Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018).

[32] See *id.*

[33] See *Maloley v. Central Neb. Pub. Power & Irr. Dist.*, 303 Neb. 743, 931 N.W.2d 139 (2019).

[34] See *Burgess v. Curly Olney's, Inc.*, 198 Neb. 153, 251 N.W.2d 888 (1977). See, also, *Cullinane, supra* note 31.

[35] See *Wagner v. State*, 176 Neb. 589, 126 N.W.2d 853 (1964), *overruled on other grounds, Bentz v. Nebraska P.P. Dist.*, 211 Neb. 844, 320 N.W.2d 763 (1982).

[36] *Weitz Co. v. Hands, Inc.*, 294 Neb. 215, 882 N.W.2d 659 (2016).

be definite enough to support a unilateral contract, but it must be definite enough to show that the plaintiff's reliance on it was reasonable and foreseeable.[37]

Here, the Morrises contend that the cotrustees made a promise to reimburse them for the costs of the renovations and that that promise induced them to complete the renovations. We cannot agree. The alleged promise by the cotrustees to reimburse the Morrises for the renovations was too indefinite, and, therefore, it was not reasonable for the Morrises to rely on said promise.

The evidence indicates that the scope of the renovations was inconsistent and continued to grow throughout the course of the project. The renovations ultimately included carpet, flooring, paint, electrical, heating, insulation, countertops, trim, ceiling fans, windows and doors, curtains, furniture, lamps, sheet sets, pillows, towels, home goods, and labor to install windows. However, testimony was also offered that one of the other siblings paid for carpet in the basement and that yet other siblings assisted in the painting and carpet removal. Additionally, there was conflicting testimony about whether the costs of the renovations were a gift from the Morrises. Based on the conflicting evidence before the trial court, we cannot find that the court clearly erred in denying the Morrises' claim for promissory estoppel.

As to the matter of breach of fiduciary duty/accounting, we have often likened such claims to a claim for professional malpractice.[38] The complaint alleges that Karen, as successor trustee of the trust, owed a duty to the beneficiaries to provide a full and complete accounting of the trust under Neb. Rev. Stat. § 30-3878(c) (Reissue 2016), but that she failed to do so. The Morrises seek relief in the form of a complete accounting and an award of attorney fees and costs.

---

[37] See *id.*

[38] See *Community First State Bank v. Olsen*, 255 Neb. 617, 587 N.W.2d 364 (1998).

Here, the evidence, again, is in conflict. An exhibit shows that Jane requested a "full accounting of [her] parents['] estate" and an "update on the [t]rust"; however, Jane testified that she never received either. On the other hand, Karen testified that she provided an inventory of the trust assets, excluding machinery, provided regular "Trustee Reports," provided a final accounting setting forth all receipts and disbursements, and kept the beneficiaries up to date on her actions as trustee. Other beneficiaries testified that they had no concerns with the way Karen acted as trustee. Based on the evidence before the trial court, we cannot find that the court clearly erred in denying the Morrises' claim for breach of fiduciary duty/accounting.

As to the matter of Karen's personal liability, having determined that the district court did not err in dismissing the Morrises' claims, there cannot be a finding that Karen is personally liable.

## CONCLUSION

For the foregoing reasons, we conclude that the district court did not err in denying the Morrises' claims for breach of contract, unjust enrichment, promissory estoppel, breach of fiduciary duty/accounting and personal liability. Accordingly, we affirm.

Affirmed.